Charla KIZER, Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA; Crain Industries, Inc., a Delaware Corporation; Foamex Retail LLC, a Delaware Limited Liability Company; and Foamex, LP, a Delaware Limited Partnership, Defendants.

No. CIV. 98–2099.

United States District Court, W.D. Arkansas, Fort Smith Division.

Sept. 14, 1998.

H. Ray Hodnett, Van Buren, AR, for Plaintiff.

Scott M. Strauss, Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR, for Defendants.

## MEMORANDUM OPINION

DAWSON, District Judge.

The case between plaintiff and separate defendant, Life Insurance Company of North America, a CIGNA Company (LINA), is now

before the court on the stipulated administrative record and the briefs of plaintiff and LINA.[1]

This action is brought by plaintiff, Charla Kizer, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (1997) (ERISA or the Act) alleging that separate defendant LINA violated the Act with regard to payment seeks a monetary judgment against LINA in an amount equal to the additional benefit she claims is due under the insurance policy, attorneys fees and costs, and an injunction preventing LINA from violating the provisions contained in ERISA and the insurance contract.

*Background.*

Charla Kizer is the surviving widow of the decedent, Troy Kizer. Prior to his death, Troy Kizer was an employee of separate defendant, Crain Industries (Crain), and as such, was offered the opportunity to participate in the company sponsored employee benefit plan entitled the "Flex Directions Plan" (the Employee Benefit Plan).[2] Part of the employee benefit package provided by Crain was a group life insurance plan purchased from LINA under which an employee could obtain term life insurance coverage in an amount based upon a multiple of his "annual compensation" or "annual salary." The information booklet[3] prepared by Crain and given to each employee describes the life insurance benefit as follows:

> Term life insurance pays a benefit to your beneficiary in the event of your death. With the Flex Directions Plan, you can choose from a variety of term life insurance and accidental death and dismember-

ment (AD & D) levels. The company provides enough Flex Dollars to purchase term life insurance coverage equal to one times your annual salary plus a matching amount of AD & D coverage. However, you must elect a minimum coverage level of $15,000.

The information booklet does not provide a definition of "annual compensation" or "annual salary."

The group life insurance contract defines "annual compensation" as follows:

> An Employee's annual earnings as reported by the Employer for work performed for the Employer, and that is in effect on September 1 immediately preceding the plan year in which the covered loss occurs.
>
> Annual earnings means an Employee's normal weekly earnings for the normal weeks established by the Employer for his job classification. It does not include amounts received as bonuses and overtime pay.

(p. 1, Group Policy No. FLI 050179, issued to Crain Industries with an effective date of January 1, 1996.) The insurance contract also provides that Crain is the subscriber covered under the policy and further states, "The Employer is acting as agent of the Insured with respect to all transactions relating to this insurance. The actions of the Employer shall not be considered actions of the Insurance Company." (p. 2, Group Life Policy No. FLI 050179, issued to Crain Industries with an effective date of January 1, 1996.)

Each participant in the Employee Benefit Plan was given an enrollment form[4] and

---

1. An order granting the plaintiff's motion to file an amended complaint joining additional defendants was granted on September 8, 1998. As plaintiff's case against LINA has been pending since January 31, 1997, and since plaintiff and LINA have submitted a stipulated record and both parties have fully briefed the issues, the court has decided to review the issues only as between these two parties. This opinion is limited to the facts and issues as they exist between plaintiff and LINA.

2. The Affidavit of Joe Gay, Director of Human Resources for Crain, attached as Exhibit 1 to LINA's response to plaintiff's supplemental brief, states that, in addition to being the plan sponsor,

Crain was also the employee benefit plan fiduciary and administrator.

3. It is not clear whether this information booklet *is the summary plan description* (SPD) of the Employee Benefit Plan. The information booklet does not contain all the information required by 29 U.S.C. § 1022(b).

4. It appears that the enrollment form was prepared by Crain. See Affidavit of Joe Gay, ¶ 9 where it states, "Crain Industries, Inc. was responsible for all notices to Troy W. Kizer concerning premiums, benefit selection and eligibility."

asked to designate, among other things, the amount of life insurance coverage desired. On or around November 15, 1995, Troy Kizer completed the 1996 Enrollment Form and elected an amount of term life insurance coverage equal to two times (2X) his "salary" as of September 1, 1995. Troy Kizer designated his wife, Charla Kizer, as the beneficiary.

An Election Confirmation Statement prepared by Crain and dated December 14, 1995, states that Troy Kizer elected term life benefits in an amount "2 X SALARY" with a policy face amount of $30,000.00. This form was to have been signed by Mr. Kizer and returned to the Human Resources Department of Crain. No signed copy of the statement is contained in the record, so there is no way to verify whether Mr. Kizer ever saw this statement. Plaintiff claims that neither she nor her husband were provided any information regarding the benefit plan other than the information booklet and the enrollment form.

Troy Kizer died on September 7, 1996.

Up until the time of his death, Troy Kizer worked as a truck driver and the amount of his earnings was determined by computing mileage pay, driver pay and vacation and holiday pay. Payroll records and a W–2 Form show that in 1995 Troy Kizer's compensation totalled $39,826.37.

The claim for death benefits under the policy was prepared by Joe Gay, the Director of Human Resources at Crain. The claim form states that Mr. Kizer was a non-union, hourly employee who earned $7.50[5] per hour working a forty hour week, and that the amount of his basic annual earnings was $14,560.00. The total amount of insurance coverage was listed at $30,000.00. Based upon this information, LINA paid a death benefit of $30,000.00 to plaintiff.

Plaintiff asserts that since Troy Kizer earned nearly $40,000.00 in 1995 and elected coverage equal to two times his annual salary or compensation, the total death benefit payable under the group life policy should be

$80,000.00. Plaintiff seeks to recover the $50,000.00 balance she claims is due. To that end, on April 22, 1997, she filed in the Sebastian County Circuit Court a contract action naming LINA as the sole defendant.

LINA removed the case to this court on May 16, 1997, contending that the state law claim is displaced by ERISA. Upon removal, it was determined that plaintiff had failed to exhaust internal claims procedures before filing suit. An order was entered on August 11, 1997 terminating the proceedings until such time as plaintiff could plead exhaustion of administrative remedies.

On or about October 2, 1997, plaintiff requested from LINA a final administrative review of her claim in accordance with ERISA. An independent review of the claim was conducted by Richard A. Radune, Claim Director for CIGNA Corporation.[6] Plaintiff's claim was again denied. The letter, dated December 18, 1997, denying the claim explains as follows:

> At issue is the amount of annual compensation which qualifies for consideration in determining life insurance benefits for Mr. Kizer. Mr. Kizer had elected coverage equal to two times his annual compensation. The policy defines annual compensation as "an Employee's annual earnings as reported by the Employer for work performed for the Employer, and that is in effect on September 1 immediately preceding the plan year in which the covered loss occurs". The employer has determined this to be $7.00 per hour which translates to $14,650 annual compensation.
>
> The definition of annual compensation further states that "Annual earnings means an Employee's normal weekly earnings for the normal weeks established by the Employer for his job classification. It does not include amounts received as bonuses and overtime pay". A large part of the $39,826 you are claiming consists of compensation under "mileage". The employer has stated that life insurance coverage provided to all of the drivers is based upon the rate of pay without mileage. Benefits

---

**5.** It appears that this figure was a typographical error. The correct rate of driver pay for decedent was $7.00 per hour.

**6.** LINA is a subsidiary of CIGNA Corporation.

would be calculated as if the individual did not drive at all. The amount of $14,650 was Mr. Kizer's base pay without any miles. As stated above, applicable earnings are established by the employer and this is determined to be $14,650.

A review of Mr. Kizer's 1996 benefits enrollment form revealed that premium for the life insurance coverage calculated for him was $92.16, the equivalent for $30,000 coverage, therefore, Mr. Kizer's premiums were based upon coverage in the amount of $30,000, not $80,000. He did not raise any question of this issue.

Upon receipt of this letter, plaintiff moved to reopen this case. The motion was granted by order entered on January 29, 1998 and a briefing schedule was set in place.

### Discussion.

█ ERISA is comprehensive legislation defining the rights and duties of parties involved with certain defined employee benefit plans. The Act also provides a means for civil enforcement.[7] Because Congress intended to create a uniform national law governing the administration of employee benefit plans,[8] ERISA contains a sweeping preemption clause mandating that the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described [in the Act]." 29 U.S.C. § 1144(a).

### 1. The Nature of Plaintiff's claim against LINA.

█ Plaintiff's original complaint alleged a state law contract action against LINA, which was fairly characterized as a claim to recover benefits due under the terms of an employee benefit plan. Therefore, it was a cause of action under 29 U.S.C. § 1132(a)(1)(B), and the provisions of ERISA pre-empted the application of State law. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Plaintiff has since filed an amended complaint that names additional defendants and

alleges additional facts. However, the cause of action against LINA remains unchanged. The amended complaint seeks relief against LINA under the provisions of 29 U.S.C. § 1132, claiming that LINA should be required to pay additional benefits due and to "perform its obligations under the provisions of the group life enrollment application and policy. Plaintiff also seeks an interpretation and judicial construction of the relevant terminology employed in the relevant documents." (Amended Complaint, ¶ 5)

It is important for a plaintiff who files suit under ERISA to clearly identify the remedial code section under which relief is being sought. The civil enforcement provisions of ERISA are delineated in 29 U.S.C. § 1132(a)(1–6). Two of those subsections are potentially available to plaintiff in this case. The first authorizes a plan participant or beneficiary to bring a civil action to recover benefits due under the terms of a plan. *See* 29 U.S.C. § 1132(a)(1)(B). The second allows a participant or beneficiary file to suit to enjoin an act or practice that violates ERISA or to obtain other *appropriate equitable relief. See* 29 U.S.C. § 1132(a)(3)(emphasis added); *see also, Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Since plaintiff seeks to recover from LINA a benefit she claims is due under the terms of the life insurance contract, the court will treat the claim against LINA as one under § 1132(a)(1)(B), that is, a suit to recover benefits due under the terms of the plan.

### 2. The Standard of Review.

█ The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The Eighth Circuit has interpreted this to mean that, "unless the plan language specifies otherwise, courts should construe

---

7. See, e.g., 29 U.S.C. § 1109 (creating fiduciary liability to the plan) and 1132(a) (permitting a civil action by plan beneficiary).

8. See discussion of congressional intent in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

any disputed language 'without deferring to either party's interpretation." ' *Wallace v. Firestone Tire and Rubber Co.*, 882 F.2d 1327, 1329 (8th Cir.1989)(quoting *Bruch*, 489 U.S. at 112, 109 S.Ct. at 955); *Brewer v. Lincoln Nat. Life Ins. Co.*, 921 F.2d 150, 153–54 (8th Cir.1990), *cert. denied*, 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991); *Finley v. Special Agents Mut. Ben. Ass'n, Inc.*, 957 F.2d 617, 619 (8th Cir.1992).

The parties seem to agree that the group life policy does not give LINA discretionary authority to determine the amount of the death benefit. Accordingly, the court will construe the disputed contract clause de novo.

Plaintiff asserts that LINA is misinterpreting the term "annual compensation" as defined in the group life policy and she makes two arguments to support her reading of the contested provision. First, plaintiff claims Troy Kizer was entitled to rely on the information he had before him when he elected the amount of the life insurance benefit. The information booklet and the enrollment form speak in terms of "annual salary." According to plaintiff, the term "annual salary" should be given its ordinary meaning as it was understood by Mr. Kizer, because he was not informed of the specialized meaning assigned to the term under the group life contract. Second, plaintiff maintains that the definition of "annual compensation" contained in the contract (i.e.: "annual earnings as reported by the Employer . . .") is ambiguous and could reasonably be understood to mean the total amount of wages and salary earned by Mr. Kizer as reported by Crain to him and the Internal Revenue Service. Plaintiff contends that the rules of construction require the court to construe the ambiguous language against LINA.

■ Turning first to the wording of the information booklet and the enrollment form, the court finds that plaintiff erroneously assumes that the information contained in those documents has bearing on the contractual obligations of LINA under the group life policy. Both the information booklet and the enrollment form were prepared by the employer, Crain. Any fault for the alleged misunderstanding created by the language contained in those documents must be imputed to the party responsible for the preparation.

LINA's involvement with the Employee Benefit Plan offered by Crain was purely contractual and limited to providing the group life policy and paying valid claims in accordance with the terms of the policy. LINA is not the benefit plan administrator as that term is defined in ERISA, § 1002(16)(A). Nor is LINA a plan fiduciary under ERISA, § 1002(21)(A). *See also, Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214 (8th Cir.1993)(rejecting the principle that an insurance company becomes an ERISA fiduciary merely because it handles claims under an employer's group policy). Therefore, LINA had no duty or obligation under ERISA to comply with the substantial disclosure requirements imposed by ERISA. Furthermore, the group life policy created no obligation for LINA to communicate directly with plan participants, and it does not appear that LINA made any representations other than those contained in the insurance contract. Therefore, the terms contained in the contract are controlling with respect to questions concerning LINA's duties to plaintiff.

■ The principles of contract interpretation require that the court begin with the language of the document in issue, reading each provision consistently with the others. *See DeGeare v. Alpha Portland Industries, Inc.*, 837 F.2d 812 (8th Cir.1988). In addition to examining the terms of the contract, the court may also consider "other manifestations of the parties' intent." *Bruch*, 489 U.S. at 113, 109 S.Ct. at 955; *Finley*, 957 F.2d at 620.

■ The Court has carefully reviewed the record and finds that the terms of the group life insurance contract are not ambiguous. The terms of the contract and the price of the policy were negotiated by representatives of Crain and an account manager for LINA.[9] The parties to the contract, Crain and LINA,

---

9. Affidavit of Larry Ditmer, Exhibit 2 to Defendant's Response to Plaintiff's Supplemental Brief.

understood that the dollar amount of life insurance coverage selected by a Crain employee would be based upon the annual compensation reported to LINA by Crain. It is clear that Crain intended to exclude mileage pay for truck drivers from the annual compensation figure. This is evident from the Election Confirmation Statement prepared by Crain stating that Mr. Kizer chose term life insurance coverage of "2 X SALARY" with a policy face amount of $30,000. In addition, the Benefit Claim Form completed by Joe Gay, Director of Human Resources for Crain, lists the amount of basic annual earnings for decedent as $14,560.00 and the amount of insurance as $30,000. Finally, the record contains an interoffice memo from Bev Pinnell to Joe Gay dated September 25, 1996 stating:

> Joe, as we discussed yesterday, you are going to review the compensation level for calculating Life and AD & D benefits your [sic] Truck Drivers. Currently we are basing life volume on base salary and not pay for mileage. We discussed using a two year average W–2 excluding any bonus, commission etc. effective 1–1–97.

By memo dated October 15, 1996, Joe Gay announced that a change had been made in determining the amount of life insurance coverage provided to truck drivers by Crain. Specifically, the coverage amount would be based upon the "average of two years wages as shown on the W–2 form excluding overtime ..." Since there is no ambiguity, there is no need to resort to the application of common rules of construction. The interpretation of "annual compensation" by LINA is supported by the language of the contract and the parties' intentions as manifested in the record.

*Conclusion.*

Plaintiff may have a legitimate claim for relief under ERISA, however it is not against separate defendant LINA. The insurance company paid the claim in accordance with the terms of the life insurance contract. As all benefits due under the policy have been paid, plaintiff is not entitled to a judgment against LINA. Accordingly, plaintiff's claim against LINA is hereby DISMISSED.

IT IS SO ORDERED.