98 F.Supp.2d 1073 (2000)
Wanda S. McMACKINS, Plaintiff,
v.
The MONSANTO COMPANY SALARIED EMPLOYEES' PENSION PLAN, Defendant.
No. 4:99CV68 CDP.
United States District Court, E.D. Missouri, Eastern Division.
February 29, 2000.
James G. Nowogrocki, St. Louis, MO, for Wanda F. McMackins.
Jeffrey S. Russell, Gregory A. Hewett, Bryan Cave LLP, St. Louis, MO, for Monsanto Co. Salaried Employees' Pension Plan.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on cross-motions for summary judgment. For the reasons set forth below, the Court will grant plaintiff's motion for summary judgment on liability only and deny defendant's cross-motion. The Court will not enter final judgment at this time, as it *1074 lacks sufficient evidence to enter an award of damages.
In her first amended complaint, plaintiff Wanda S. McMackins alleges that defendant The Monsanto Company Salaried Employees' Pension Plan violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1055, in determining the amount of the qualified preretirement survivor annuity payments plaintiff is to receive on a monthly basis for the duration of her life.

I. Factual Background

The parties agree that there are no disputes of material fact. Plaintiff Wanda S. McMackins married Dudley McMackins on March 25, 1965. On August 10, 1965, Mr. McMackins began his employment as a research scientist for Monsanto Company. Mr. McMackins was killed in an automobile accident on March 30, 1993. On the day he died, Mr. McMackins was 49 years and 2 months old, was married to plaintiff, and was also actively employed at Monsanto where he had worked for over 27 years.
At the time of his death, the pension plan in effect at Monsanto was the Salaried Employees' Pension Plan (1991), and the plan supplement in effect was the Supplement To Monsanto Company Salaried Employees' Pension Plan (1986). After Mr. McMackins's death, The Monsanto Company Salaried Employees' Plan ("the Plan") began making qualified preretirement survivor annuity ("QPSA") payments to plaintiff in the amount of $475.57 per month. These payments were retroactive to the first day of the first month after Mr. McMackins's death, April 1, 1993.
Mr. McMackins's retirement benefits were calculated under the Plan as if he had retired on the day of his death at age 49. Therefore, the retirement benefits were calculated to include a .25% reduction for every month between the normal retirement age of 65 and Mr. McMackins's deemed retirement age of 49. As a result, Mr. McMackins's retirement benefits were reduced by 47.5% (.25% multiplied by 190 months).
After much correspondence between plaintiff and various employees and officers of Monsanto, plaintiff wrote a letter dated June 19, 1995, to Mr. Herschel V. Sellers, the Director of Corporate Benefits at Monsanto, in which she requested an appeal to the Plan Committee of the Monsanto Company salaried employees' pension plan of the determination of the amount of the monthly QPSA payments. In her letter, plaintiff quoted from 29 U.S.C. § 1055(e)(1)(A)(ii) and (e)(1)(B), which sets forth the requirements of QPSA calculations, in support of her appeal. In a letter dated November 1, 1995, Mr. Sellers informed plaintiff that Monsanto's Employee Benefits Plans Committee ("EBPC") had considered her claim that her monthly QPSA payments should be larger and had decided to deny her appeal because her benefits had been correctly calculated under the terms of the Plan. The letter stated that plaintiff could consider "these actions by the EBPC to be the final decision of Monsanto Company."
Plaintiff subsequently brought this suit. Plaintiff contends that under ERISA, 29 U.S.C. § 1055(e)(1)(A)(ii)(II), Mr. McMackins's retirement should have been calculated as if he had retired at the Plan's early retirement age of 55, not the day of his death at age 49. She further claims that if Mr. McMackins were treated as if he had retired at age 55, he would then be eligible for the "Combo 80" feature of the Plan, which states that if a participant's age plus years of service equal 80 at the participant's early retirement date, the participant can retire early without the .25% reduction for every month the participant retires prior to age 65. Plaintiff claims that Mr. McMackins's retirement should not have been reduced for early retirement before the age 65 because age 55 plus 27 years of service equals 82.

II. Summary Judgment Standards

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment *1075 is appropriate if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As set forth above, the parties agree that, at least as to liability, there are no material factual disputes and the issues are purely legal.

III. Discussion

A. The ERISA Standard of Review
Under ERISA, a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 108, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that a denial of benefits challenge "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S.Ct. 948.
In cases in which the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Eighth Circuit Court of Appeals has held that courts should apply a deferential arbitrary and capricious standard instead of a de novo standard. Lickteig v. Business Men's Assurance Co. of Am., 61 F.3d 579, 583 (8th Cir.1995). In order to determine if the administrator or fiduciary acted arbitrarily and capriciously, the Eighth Circuit, in Finley v. Special Agents Mut. Benefit Ass'n, Inc., directed the courts to examine the following factors: 1) whether the interpretation is consistent with the goals of the Plan; 2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; 3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether they have interpreted the words at issue consistently; and 5) whether their interpretation is contrary to the clear language of the Plan. Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir.1992); see also Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir.1997); Lickteig, 61 F.3d at 583-84.
In this case, the Plan confers discretionary authority to determine eligibility for benefits or to construe the terms of the Plan to the Plan Committee. Section 12.1 of the Plan states that the Plan Committee shall consist of three or more members appointed by the Corporation. Section 12.2 gives the Plan Committee the powers, rights, and duties specifically stated elsewhere in the Plan, the Trust Agreement or any other document. In addition, in section 12.2(a), the Plan Committee is given the powers, rights, and duties "[t]o determine all questions concerning administration and management arising under the Plan, including the power to determine the rights or eligibility of employees or participants and any other persons, and the amounts of their benefits under the Plan, and to remedy ambiguities, inconsistencies or omissions." Because the Plan Committee is given such discretion, the arbitrary and capricious standard of review applies. The Court must therefore examine the Finley factors to determine if the Plan Committee's denial of additional benefits to plaintiff was arbitrary and capricious.

B. The ERISA Qualified Preretirement Survivor Annuity
In order to determine whether the Plan Committee's denial of additional benefits to plaintiff was arbitrary and capricious, it is first necessary to set forth the elements of the qualified preretirement survivor annuity as prescribed by ERISA.
*1076 Section 1055(a) of Title 29 establishes the requirements of joint and survivor annuities and preretirement survivor annuities. It states that each pension plan to which this section applies shall provide that "in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." The plans to which this section applies include defined benefit plans. 29 U.S.C. § 1055(b)(1).
Section 1055(e)(1) defines the qualified preretirement survivor annuity as a survivor annuity for the life of the surviving spouse of the participant if:
(A) the payments to the surviving spouse under such annuity are not less than the amounts which would be payable as a survivor annuity under the qualified joint and survivor annuity under the plan (or the actuarial equivalent thereof) if 
...
(ii) in the case of a participant who dies on or before the date on which the participant would have attained the earliest retirement age, such participant had 
(I) separated from service on the date of death
(II) survived to the earliest retirement age,
(III) retired with an immediate qualified joint and survivor annuity at the earliest retirement age, and
(IV) died on the day after the day on which such participant would have attained the earliest retirement age, and
(B) under the plan, the earliest period for which the surviving spouse may receive a payment under such annuity is not later than the month in which the participant would have attained the earliest retirement age under the plan.
In the case of an individual who separated from service before the date of such individual's death, subparagraph (A)(ii)(I) shall not apply.
29 U.S.C. § 1055(e)(1).
Section 1055(e)(1)(A) directs that the amounts payable under the QPSA not be less than would be payable as a survivor annuity under a qualified joint and survivor annuity ("QJSA") under the plan. Section 1055(d) defines a qualified joint and survivor annuity as an annuity:
(1) for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of (and is not greater than 100 percent of) the amount of the annuity which is payable during the joint lives of the participant and the spouse, and
(2) which is the actuarial equivalent of a single annuity for the life of the participant.
Such term also includes any annuity in a form having the effect of an annuity described in the preceding sentence.
29 U.S.C. § 1055(d).
Section 1055(e), which provides the definition of a QPSA, contains many references to the "earliest retirement age" in defining a QPSA. Section 1055(h)(3) provides the definition of earliest retirement age, stating that "[t]he term `earliest retirement age' means the earliest date on which, under the plan, the participant could elect to receive retirement benefits."
Thus, in the case of an individual who dies before the earliest date on which he could have elected to receive retirement benefits (the earliest retirement age), the individual's spouse receives a QPSA which is calculated as if the day of death is the end of the individual's service, the individual survived to the earliest retirement age, retired with a qualified joint and survivor annuity at the earliest retirement age, and died on the day after he would have attained the earliest retirement age. Payments do not have to be made to the spouse, however, until the month in which *1077 the participant would have attained the earliest retirement age under the plan.

C. The Monsanto Plan
At the time of Mr. McMackins's death, the pension plan in effect at Monsanto was a defined benefit plan, the Salaried Employees' Pension Plan (1991), and the plan supplement in effect was the Supplement To Monsanto Company Salaried Employees' Pension Plan (1986). Section 3.1 of the Plan sets out the "normal retirement date" as "the first day of the month coincident with or next following the later of the month in which he attains age 65 or the fifth anniversary of the date he became a participant in the Plan," whichever occurs later. Section 3.2 defined a participant's "early retirement date" as "the first day of the month following the month in which he retires from the employ of all the Employers before his Normal Retirement Date, but after he has both attained at least age 55 years and is vested pursuant to Section 2.2 above." Section 2.2 merely described the terms of vesting, on which there is no dispute in this case. Section 3.4 stated that "[a] participant's `Retirement Date' will be that one of the dates described in Sections 3.1 and 3.2 above as of which he retires from the employ of his Employers and subsidiaries."
Section 4 delineated the normal and early retirement benefits of the Plan. Section 4.5 described early retirement benefits for a participant who retires on an early retirement date and does not elect the option available in section 4.4 to defer monthly retirement income until his normal retirement date. The Plan stated:
The Monthly Retirement Income which is payable to a participant ... will be computed by determining the amount of Monthly Retirement Income which the participant would have been entitled to receive under Section 4.4 commencing at his Normal Retirement Date and reducing such amount by one-fourth of one percent for each complete calendar month by which the date his Monthly Retirement Income payments commence precedes his Normal Retirement Date, except that if the sum of his age and years of Vesting Service as of his Early Retirement Date equals or exceeds the "Combo Factor" specified in the applicable Supplement hereto, the reduction provided for above shall not apply.
The 1986 Supplement which was in effect at Mr. McMackins's death defined the early retirement combo factor, that is the years of vesting service plus age, for purposes of section 4.5, as 80.
Section 9 of the Plan contained the details of the payment of retirement income and other benefits. Section 9.5 established the Spouse's Retirement Income Benefit, which was to be paid to a participant's eligible surviving spouse, meaning the person to whom the participant was married on the date of his death, if the participant "die[d] after completion of 20 or more years of Vesting Service while employed by an Employer." Section 9.5 also set forth the method of calculating the amount of the Spouse's Retirement Income Benefit as follows:
The Spouse's Retirement Income Benefit shall be a monthly amount payable for life to the participant's Eligible Surviving Spouse and shall be equal to fifty percent (50%) of the Monthly Retirement Income that would have been payable to the participant in accordance with paragraph 9.1(a) if the participant had retired on the date of his death and had commenced to receive benefits on the first day of the month next following the month in which his death occurred and based upon his Benefit Service and Average Total Earnings as of the date of his death and calculated under Section 4.1 or, as applicable, Section 4.2 of the Plan. Such Spouse's Retirement Income Benefit shall commence on the first day of the month following the month in which the participant's death occurred.
Section 9.1(a), as referred to by section 9.5, provided the terms of the Plan's qualified joint and survivor annuity, which stated *1078 that the QJSA "shall provide for a reduced Monthly Retirement Income or Monthly Vested Termination Benefit continuing during the participant's lifetime, and upon the participant's death, payment of one-half of such reduced Monthly Retirement Income or reduced Monthly Vested Termination Benefit shall be made to such spouse if such spouse is then living." Sections 4.1 and 4.3, as referred to by section 9.5, described the terms of normal retirement benefits and late retirement benefits, respectively. Under the QPSA, section 4.1 would be used to calculate the amount of retirement benefits a participant would have received at his normal retirement age of 65.
Therefore, while the usual early retirement age under the Plan was 55, in the case of a participant who died after completion of 20 or more years of vesting service, the participant was deemed to have an early retirement date of the date of death. The spouse of the participant was to receive fifty percent of the QJSA that would have been payable to the participant if his date of death was his retirement. The payments would begin on the first day of the first month following the participant's death.

D. Mr. McMackins's Retirement Benefits
Mr. McMackins's retirement benefits, paid to plaintiff in the form of a QPSA, were calculated in the following manner. Mr. McMackins was deemed to have retired early at the age of 49 years and 2 months  the date of his death. Mr. McMackins's benefits were first calculated as if he had reached the normal retirement age of 65 in accordance with section 4.1 of the Plan and the 1986 Supplement. The 1986 Supplement stated that the "Monthly Retirement Income [would be] determined by multiplying 1.4% times Average Total Earnings times Years of Benefit Service times the Vested Percentage set forth in Section 2.2 of the Plan," for a pre-April 1, 1986 participant. Mr. McMackins's earnings over his last thirty-six months of employment were calculated at $4,955.88 per month. This amount of $4,955.88 was then multiplied by a factor of 1.4% and by the years of benefit service of 27.691 for a total of $1921.20.
Mr. McMackins's retirement benefits were then reduced by an early retirement reduction factor of 52.50%. This early retirement reduction factor was determined by looking to section 4.5, which stated that early retirement was determined by reducing the amount a participant would have received at age 65 by one-fourth of one percent (.25%) for each complete calendar month by which the date the payments commence precedes his Normal Retirement Age. Mr. McMackins was 49 years and 2 months, or 590 months, old when he died. The normal retirement age of 65 equals 780 months. Mr. McMackins's retirement was reduced by .25% for 190 months (780 months minus 590 months) which means his benefits were reduced by 47.5%. In order to reduce the benefits by 47.5%, the retirement benefits of $1921.20 were multiplied by a reduction factor of 52.5% (100% minus 47.5%). After the early retirement reduction factor was applied, Mr. McMackins's benefits totaled $1008.63. This amount is what Mr. McMackins would have received in the form of a single life annuity. The basic benefit of $1008.63 was multiplied by a factor of .943 to determine the actuarial equivalent of the amount of basic benefit in the form of a joint and survivor annuity. The basic benefit was therefore $951.14. Plaintiff received half of this figure in accordance with the QPSA and QJSA provisions of the Plan for a monthly payment of $457.57.

E. The Finley Factors
As stated earlier, plaintiff contends that her monthly payments should be higher because ERISA requires that Mr. McMackins should have been treated as if he retired at age 55 instead of his date of death at age 49. Plaintiff further contends that the retirement benefits should not be *1079 reduced by the early reduction factor for each month between age 55 and 65 because Mr. McMackins would then meet the "Combo 80" standard. The Court agrees.
In this case, the third factor of the Finley test is the most important concern, and the Court will accordingly address it first. The third of the Finley factors asks the courts to determine whether the plan conflicts with the substantive or procedural requirements of the ERISA statute. The Court finds that the Monsanto Plan conflicts with section 1055(e)(1)(A)(ii) of ERISA, which sets forth the requirements of the QPSA of a participant who dies on or before the date on which the participant would have attained the earliest retirement age. According to the statute, the QPSA is calculated as if the participant had separated from service on the date of death and survived to the earliest retirement age. 29 U.S.C. § 1055(e)(1)(A)(ii)(I)-(II). Defendant argues that it complies with ERISA, stating, "[f]irst the Committee deemed Mr. McMackins to have retired on the date of his death under Section 9.5 in satisfaction of the required assumption that the participant separated from service on the date of death. Second, the Committee treated Mr. McMackins as having survived to age 49, his earliest retirement age under Section 9.5, in satisfaction of the required assumption that the participant survived to the earliest retirement age." Defendant states that "[p]lan § 9.5, which plaintiff concedes governs her claim (Plaintiff's Mem. at 6), provides a special early retirement date on the participant's date of death." Defendant claims this specific early retirement age applies instead of the general early retirement age of 55.
ERISA does require that participants who die on or before the earliest retirement age are deemed to have separated from service on the date of death. This does not mean, however, that the participant is deemed to have retired on the date of death as defendant argues. Instead this portion of section 1055 determines that the participant's service ceases at death and those years of service already accumulated by the participant become all that is possible. Thus, in the case of Mr. McMackins, his years of service stopped at 27.691 and could never increase.
ERISA goes on to state that the participant is then treated as if he survived to the earliest retirement age. Under section 3.2 of the Monsanto Plan, early retirement date is defined as the date the participant retires after having attained age 55. It is true that section 9.5 of the Plan attempts to create a "special early retirement date" on the date of the participant's death for purposes of calculating the QPSA of participant's who have twenty years of service. This attempt, however, does not comply with ERISA. ERISA defines earliest retirement age as "the earliest date on which, under the plan, the participant could elect to receive retirement benefits." According to the use of the word "elect" in the statute, earliest retirement age occurs on the earliest date on which the participant could choose or elect to receive retirement benefits. The earliest date on which Mr. McMackins or any participant could choose to receive benefits was age 55. Attempting to create a special earliest retirement age conditioned on death for this QPSA therefore does not meet the definition of earliest retirement age conditioned on choice as defined by ERISA.
Due to the Plan's attempt to create a special early retirement age under section 9.5, as examined above, there is language in the Plan that is meaningless or internally inconsistent, thus failing the second factor of Finley. Section 3.2 and section 9.5 create two separate earliest retirement dates, which makes application of the Plan inconsistent. For example, section 4.5 which deals with the calculation of early retirement benefits states that if the "Early Retirement Date equals or exceeds the `Combo Factor' specified in the applicable Supplement hereto, the reduction provided for above shall not apply." The Summary *1080 Plan Description ("SPD"), to which defendant often refers for support, however, states that "the `Combo 80' feature allows employees whose age and vesting service add up to 80, and who are at least age 55, to retire early with no reduction in benefits." The SPD also plainly states under a section entitled "Benefits when you retire from Monsanto" that "[y]ou can retire at any time at or after age 55, if you are vested in a pension benefit." The Court acknowledges that the SPD states that in the case of inconsistency, the Plan takes precedent, but the language in the SPD demonstrates that the early retirement age at Monsanto is considered age 55; any "special retirement age" created by this QPSA makes the Plan's language meaningless and inconsistent.
As for the other Finley factors, while the Plan and the Plan Committee's interpretation of the Plan do not clearly violate Finley, these factors in the Plan's favor do not save the Plan or the interpretation of the QPSA in this case. Lickteig, 61 F.3d at 584 (the Eighth Circuit encourages courts to apply all five Finley factors or explain why a particular factor is inapplicable). The first Finley factor asks the courts to decide if the interpretation is consistent with the goals of the Plan. The Plan's purpose is "to provide retirement benefits for eligible employees." While defendant is supplying plaintiff with some benefits consistent with its purpose, ERISA requires more in terms of the QPSA than just some retirement benefits. ERISA requires the benefits be calculated as if the participant reached the earliest retirement age. As for the fourth Finley factor, there is no evidence that defendant has not interpreted the words at issue consistently in other cases. As stated before, however, the words of the Plan in this case do not comply with ERISA, and this overrides the question of whether the QPSA in section 9.5 has been applied in a similar manner in other cases. Finally, the courts are to ask whether the interpretation is contrary to the clear language of the Plan. In this case, the Committee's interpretation is consistent with section 9.5 of the Plan. It is not consistent with section 3.2 of the Plan. Moreover, the language of section 9.5 is not in compliance with ERISA, and thus an interpretation consistent with section 9.5 does not help defendant.
Upon consideration of the Finley factors that govern ERISA cases in which the Plan grants discretion to the administrators or fiduciaries, the Court finds that the Plan Committee's interpretation was arbitrary and capricious because the Plan conflicts with ERISA and renders language in the Plan meaningless or internally inconsistent. Mr. McMackins's retirement benefits should have been calculated as if he separated from service on the date of death, giving him 27.691 years of service, and had survived to the earliest retirement age under the Plan of 55. As section 4.5 of the Plan is now written, if the earliest retirement age of 55 plus the years of service equal 80, the Combo 80 feature does apply and eliminates any early reduction in retirement benefits. There is currently no feature or language of section 4.5 that makes the Combo 80 feature inapplicable when a QPSA is at issue and the deceased participant is deemed to have survived to the earliest retirement age. Mr. McMackins, if his retirement benefits are calculated as if he had survived to age 55, would therefore be eligible for the Combo 80 feature of the Plan. Mr. McMackins's benefits should not have been reduced for the 120 months for the time between age 55 and 65. The Court notes that it would seem to be a fairly rare circumstance in which a participant who dies before the age of 55 could qualify for the Combo 80, because the years of service required would have to be so great to make up for the lost years of age. Under the QPSA as defined by ERISA, the Plan would not have been required to begin payments to plaintiff until January 1999, the month in which Mr. McMackins would have turned age 55. The Court will therefore grant summary judgment for plaintiff *1081 on liability only and deny defendant's motion.
The Court lacks sufficient evidence to craft a final order at this time. Plaintiff has received the benefit of the payments of $475.57 per month for 69 months (January 1999 minus April 1993), which she should not have received. She should have started receiving the higher benefit in January of 1999. The plaintiff has the burden of presenting evidence to show the amounts she is due, reduced by the benefits she received before they were due, including, of course, a method of calculating the value she obtained by receiving the money earlier. The Court will therefore set a conference with counsel to establish a schedule and procedure for determining the amount of judgment and the form of final relief. The Court expects counsel to meet and confer in advance of the status conference to attempt to reach agreement on the proper procedure.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's summary judgment motion [# 16] is granted with respect to liability only and defendant's motion for summary judgment is denied [# 17].
IT IS FURTHER ORDERED that the Court will hold a telephone status conference with counsel to set a schedule and procedure for determining the amount of judgment and the form of final relief. The telephone conference will be held on Tuesday, March 14, 2000; at 10:00 a.m. The Court will initiate the call.