**Drexel FINLEY and Grace Finley, Appellees,**

v.

**SPECIAL AGENTS MUTUAL BENEFIT ASSOCIATION, INC., Appellant.**

No. 91–1816.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1991.

Decided Feb. 27, 1992.

Denis F. Gordon, Washington, D.C., argued (Brad W. Spencer and Anne S. McCulloch, on brief), for appellant.

John M. Belew, Batesville, Ark., argued (J.T. Skinner, on brief), for appellees.

Before LAY,* Chief Judge, WOLLMAN and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Appellant Special Agents Mutual Benefit Association, Inc. (SAMBA) appeals from an order and judgment of the district court entering judgment in favor of appellees Drexel and Grace Finley in the amount of $60,000 plus interest.

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was sub-

## I. BACKGROUND

The facts of this matter have been stipulated to by the parties. During May 1989, Rickey C. Finley (Finley) was a Special Agent for the United States Drug Enforcement Administration (DEA). Finley was assigned to Operation Snocap, the purpose of which was to interdict and destroy coca labs located in the Huallaga Valley, Peru. Due to the dangers of the assignment, Finley and the other DEA agents assigned to Operation Snocap maintained sleeping quarters in Lima, Peru, and traveled daily by air to and from the base camp in the Huallaga Valley. On May 20, 1989, Finley and others departed the base camp on their daily flight to Lima. The airplane crashed in the Andes Mountains, resulting in Finley's death. The cause of the crash is unexplained, but the parties have stipulated that it was an accidental crash.

SAMBA is a not-for-profit corporation, organized under the laws of the District of Columbia. Its purpose is to offer benefit programs to active and certain retired employees of various federal law enforcement agencies, including the DEA. At the time of Finley's death, he was covered for accidental death and dismemberment (AD & D) benefits in the amount of $120,000 under group insurance policy number G9400 issued by the Prudential Insurance Company of America (Prudential) and held by SAMBA as part of the SAMBA Group Insurance Plan (Plan). Drexel and Grace Finley (appellees Finley) are the parents and beneficiaries of Rickey C. Finley.

The Plan provides for an additional AD & D benefit, the entitlement to which is at issue here.

The amount of Group Accidental Death and Dismemberment Insurance increases by 50 percent of the covered amount for an active member killed in the line of duty when his or her death results directly from a confrontational situation where he or she at the time of the confrontation was engaged in an attempt to protect his

---

mitted and took senior status on January 7, 1992, before the opinion was filed.

or her own life, or the life of another, while on official duty with his or her agency, as determined by the SAMBA Board of Directors.

SAMBA Insurance Plans—Comprehensive Coverage and Rate Information at 6 (the "killed in the line of duty" provision).

On August 24, 1989, the SAMBA Board of Directors (SAMBA Board) voted to deny the claim for additional benefits under the "killed in the line of duty" provision. The SAMBA Board determined that Finley's death did not involve a "confrontational situation" because the accidental plane crash was not confrontational. Appellees Finley then filed this action in the Circuit Court of Independence County, Arkansas. SAMBA removed this matter to the United States District Court for the Eastern District of Arkansas on the basis that appellees' claim relates to a plan governed by the Employee Retirement Income Security Act of 1974 (ERISA) (codified at 29 U.S.C. § 1001 et seq.). The parties agree that the SAMBA plan is governed by ERISA. Ruling on cross-motions for summary judgment, the district court concluded that whether it applied a de novo or an arbitrary and capricious standard of review to the SAMBA Board's decision, Finley's death was clearly a direct result of a confrontational situation within the language of the "killed in the line of duty" provision and awarded judgment in favor of the appellees Finley.

## II. DISCUSSION

In *Firestone Tire & Rubber Co. v. Bruch,* the United States Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). "In other words, unless the plan language specifies otherwise, courts should construe any disputed language 'without deferring to either party's interpretation.' " *Wallace v. Firestone Tire & Rubber Co.,* 882 F.2d 1327, 1329 (8th Cir.1989) (quoting *Bruch,*

489 U.S. at 112, 109 S.Ct. at 955); *Brewer v. Lincoln Nat'l Life Ins. Co.,* 921 F.2d 150, 153–54 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991). Thus, the first issue to be resolved is whether or not the Plan language gives the SAMBA Board the discretionary authority to construe the term "confrontational situation" and to determine whether Finley's death falls within the "killed in the line of duty" enhanced benefit provision.

■ The parties dispute whether the clause "as determined by the SAMBA Board of Directors" relates to the entire "killed in the line of duty" provision or applies only to the preceding clause "while on official duty with his or her agency." The "as determined" clause can be viewed as modifying the entire paragraph, thus giving the SAMBA Board the discretionary authority to determine when a participant is "killed in the line of duty," whether or not the "death results directly from a confrontational situation," what a "confrontational situation" includes, whether the participant was "engaged in an attempt to protect" a life, and whether the participant was "on official duty." It can also be viewed as modifying only the preceding clause and limiting the SAMBA Board's discretionary authority to determining whether the participant was "on official duty" at the time of his or her death. No argument is made that the SAMBA Board has the discretionary authority to determine the applicability and meaning of the "as determined" clause. Accordingly, the court construes that clause de novo.

■ In construing the "as determined" clause de novo, we look to the terms of the governing instrument without deference to either parties' interpretation. *Bruch,* 489 U.S. at 112, 109 S.Ct. at 955. Appellees Finley argue that we should apply the common rule of construction that ambiguous language in an insurance contract is construed against the drafter and in favor of the insured. However, in this circuit that rule has no place in a de novo construction of an ERISA plan. *See Brewer,* 921 F.2d at 153; *Garred v. General Am. Life Ins.*

*Co.,* 774 F.Supp. 1190, 1197 (W.D.Ark. 1991). *But see Masella v. Blue Cross & Blue Shield of Conn., Inc.,* 936 F.2d 98, 107 (2d Cir.1991) (concluding that rule is consistent with principle of trust law that trust property is to be dealt with for the benefit of the beneficiary); *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538–40 (9th Cir.) (finding rule applicable), *cert. denied,* —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).

We also consider the extrinsic evidence presented regarding the adoption of the "killed in the line of duty" provision. Besides examining the terms of the plan, we may also consider "other manifestations of the parties' intent." *Bruch,* 489 U.S. at 113, 109 S.Ct. at 955. Neither party contends that we may not consider this evidence in construing the "as determined clause," nor does either party dispute the factual content of the two documents we consider. The prior version of this feature of the Plan provided the enhanced benefit for any participant "killed in the line of duty," without further definition. The current "killed in the line of duty" provision was adopted at the September 4, 1986 meeting of the SAMBA Board.

The Board is now seeking a firm definition for "killed in the line of duty." ... Mr. Quinn felt that the definition should include something to the effect that the death occurred during a "confrontational" situation.

Mr. Barnett submitted the following definition of "killed in the line of duty."

An active member is killed in the line of duty within the meaning of this policy when his or her death results from a confrontational situation wherein he or she was engaged in an attempt to protect his or her own life, or the life of another, while on official duty with his or her agency.

MOTION: Mr. Quinn made a motion that Mr. Barnett's definition of "killed in the line of duty" be accepted as written, with the addition of the following phrase,

"as determined by the SAMBA Board of Directors." Mr. Denmon seconded the motion, and all Board members present voted in favor.

Minutes of the September 4, 1986 meeting of the SAMBA Board of Directors and Officers at 3. On September 29, 1986, the provision was revised in minor ways by attorneys for Prudential. Those revisions were approved by SAMBA's attorney. Appellant also presents the declaration of George T. Quinn, who has been a member of the SAMBA Board since January of 1984. Mr. Quinn states that in 1985 several SAMBA participants were killed in routine accidents in which their employing agency determined that they had been killed in the line of duty, thus being eligible for the killed in the line of duty benefit. Mr. Quinn states that the new definition was adopted "in order to limit eligibility for this benefit increase to situations in which the agent is fatally wounded while attempting to protect his life or the lives of others from an assailant whom he or she is confronting, *e.g.,* during an exchange of gunfire with a criminal." Declaration of George T. Quinn, signed October 22, 1990, at 3.[1]

■ After carefully considering this issue, we conclude that the "as determined" clause applies to the entire paragraph and gives the SAMBA Board the discretionary authority to define "confrontational situation" and to determine whether or not a plan participant's beneficiaries are eligible to receive the increased benefit. The placement of the comma immediately prior to the "as determined" clause, coupled with the placement of the clause at the very end of the paragraph, strongly suggest that the "as determined" clause applies to the entire paragraph. Additionally, the context of Mr. Quinn's proposed addition of the "as determined" clause suggests that the "as determined" clause was adopted to give the SAMBA Board discretion to determine when a participant was "killed in the line of

---

**1.** Unlike appellees, we interpret the "e.g." in Mr. Quinn's affidavit as having its ordinary meaning of "for example." We *do not* view Mr. Quinn's affidavit as attempting to limit the application of the "killed in the line of duty" provision only to deaths occurring "during an exchange of gunfire with a criminal."

duty" as defined by the entirety of the language proposed by Mr. Barnett.

Further, it would be an odd construction to conclude that the SAMBA Board intended to only retain the discretion to determine whether or not the participant was "on official duty with his or her agency," as that determination is more appropriately made by the employing agency and is generally a straightforward decision. The purpose of the adoption of the present version of the "killed in the line of duty" provision was to limit benefits to cases where the plan participant is killed in a "confrontational situation" and to deny benefits in cases where the plan participant is killed in a routine accident. A "confrontational situation" could arise from innumerable unforeseeable factual circumstances. The line between a "confrontational situation" and a routine accident is not a bright one. It would be a strained interpretation to conclude that the SAMBA Board retained discretion to determine whether or not the plan participant was "on official duty" without retaining the discretion to determine the much more difficult question of whether the plan participant's death "result[ed] directly from a confrontational situation."

■ Having concluded that the SAMBA Board of Directors does possess the discretionary authority to define "confrontational situation" and to determine whether a participant's death directly results from a confrontational situation, we next turn to the issue of whether the SAMBA Board's exercise of its discretion in this case is arbitrary and capricious. SAMBA contends that Finley's death in an accidental plane crash did not "directly" result from a "confrontational situation" and that a "confrontational situation" requires a direct face-to-face meeting rather than the avoidance of a potential confrontation. Under the arbitrary and capricious standard of review, the SAMBA Board's construction and decision will be upheld, if reasonable. *Bruch*, 489 U.S. at 111, 109 S.Ct. at 954. In determining whether the SAMBA Board's interpretation of "confrontational situation" and decision to deny the "killed in the line of duty" benefit are reasonable, we consider whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan. *See De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir.1989) (citing cases).

The primary goal of the Plan is to provide an employees' benefit and welfare plan for members (active and retired) of various federal law enforcement agencies. The Plan provides basic accidental death and dismemberment benefits for loss of life or specified dismemberments which occur "through accidental means on or off the job." SAMBA Insurance Plans—Comprehensive Coverage and Rate Information at 6. That basic benefit would be awarded whether or not a participant's accidental death was a direct result of a confrontational situation. The "killed in the line of duty" provision provides additional accidental death benefits when the "death results directly from a confrontational situation." The participants in SAMBA's Plan are limited to members of various federal law enforcement agencies. Members of such agencies must face risks in "confronting" suspected criminals not faced by the average person. The "killed in the line of duty" provision is designed to cover circumstances when death occurs as a direct result of those risks. The SAMBA Board's interpretation of the "killed in the line of duty" provision is in accord with that goal.

The SAMBA Board's interpretation does not appear to render any language in the Plan meaningless or internally inconsistent. Nor is there any suggestion that their interpretation conflicts with the requirements of the ERISA statute. There is no suggestion that the SAMBA Board has not consistently interpreted "confrontational situation."

We must also consider whether the SAMBA Board's interpretation is contrary to

the clear language of the Plan. In determining what "confrontational situation" means, we look to the dictionary definitions of "confrontation" and "confront." "Recourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary." *Central States, S.E. and S.W. Areas Pension Fund v. Independent Fruit and Produce Co.*, 919 F.2d 1343, 1350 (8th Cir.1990) (citation omitted), *cert. denied*, ─── U.S. ───, 112 S.Ct. 59, 16 L.Ed.2d 35 (1991). "[W]ords are to be given their plain and ordinary meaning as understood by a reasonable, average person." *Id.*

> CONFRONT: 1a: to stand facing or opposing esp. in challenge, defiance, or accusation: FACE: stand up to ... b: to face (something dangerous or dreaded) without flinching or avoiding ... 2: to put or bring face to face ... 3a: MEET, ENCOUNTER.

> CONFRONTATION: the act of confronting: the state of being confronted: as a: MEETING; ... b: the clashing of forces or ideas: CONFLICT.

*Webster's Third New International Dictionary* 477 (3d ed. 1981). These definitions lend strong support to the SAMBA Board's interpretation that a "confrontational situation" requires a face-to-face meeting between the deceased Plan participant and the cause of his or her death. SAMBA's position that Finley was "avoiding" rather than "confronting" is consistent with these dictionary definitions.

Finally, the "killed in the line of duty" provision requires that the death directly result from, *i.e.*, be caused by, a confrontational situation. While it could be argued that Finley's presence in Peru was part of a confrontational situation between the DEA and drug cartel members and that Finley would not have died if security concerns had not required him to return to Lima each evening, we find that such reasoning stretches the concept of causation to its limits. Having retained the discretion, the SAMBA Board is also entitled to determine whether Finley's death "directly" resulted from a confrontational situation. We cannot conclude that the Board's

determination of that issue is arbitrary or capricious.

## III. CONCLUSION

It is clear to this court that the SAMBA Board's construction of the killed in the line of duty provision and denial of benefits under the "killed in the line of duty" provision is not arbitrary and capricious and must be upheld.

The judgment of the district court is reversed. This matter is remanded to the district court with directions to enter judgment in favor of the Special Agents Mutual Benefit Association, Inc.