# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1660

_____

Dede Smith,

   Appellee,

  v.

United Television, Inc. Special
Severance Plan,

   Appellant.

\*
\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of Minnesota.
\*
\*
\*

_____

Submitted: October 18, 2006
Filed: February 2, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

United Television, Inc. Special Severance Plan appeals the District Court's order awarding Dede Smith severance benefits that the Plan had previously denied. We hold that the Plan did not abuse its discretion by denying benefits and reverse the judgment of the District Court.

In 1999, United Television, Inc. (UTI) created the United Television, Inc. Special Severance Plan in anticipation of the sale of UTI's television stations to Fox Television Stations, Inc. The Plan was "intended to help retain qualified employees, maintain a stable work environment and provide economic security to certain

employees of [UTI] in the event of a Qualifying Termination following a Change in Control." Appellant's App. at 15. A Plan participant qualifies for severance benefits in the event of a "Qualifying Termination," which is defined in the Plan as "a termination of an Employee's employment, following a Change in Control . . . by the Employee for Good Reason." Id. at 18. A "Good Reason" includes a "reduction in the Employee's salary or bonus opportunity." Id. The Plan administrator, a three-person committee, has the "sole discretion . . . to determine who shall be eligible for Severance Benefits [and] to interpret the Plan." Id. at 23.

In August 2001, Fox acquired the television station KMSP-TV from UTI. Dede Smith was an account executive for KMSP-TV before and after the sale. Prior to the sale, under UTI's compensation formula, Smith: (1) received an annual guaranteed salary of $51,199.20; (2) received a 2.97% commission on existing and new business; and (3) was eligible for discretionary quarterly bonuses. Smith's total compensation was $149,375.92 in 2000 and $173,972.71 in 2001. After the sale, in 2002, Fox instituted a new compensation formula, under which Smith: (1) received a draw based on her anticipated commissions; (2) received a 4.1% commission on existing business and new business generated after the first six months of the new formula; (3) received a 12% commission on new business generated during the first six months of the new formula; (4) was eligible for a discretionary bonus from a pool of $10,000; and (5) was eligible for a semiannual bonus of between $500 and $1000. Under the Fox compensation formula, Smith received a biweekly draw of $3,173 ($82,498 annually), which was based on 50% of her projected commissions. Smith's total compensation was $149,682.17 in 2002.

Smith resigned in May 2003 and claimed severance benefits under the Plan's "reduction in salary or bonus opportunity" provision. The Committee denied Smith's claim, determining that Smith's total earnings opportunity was "enhanced, and not decreased," within the meaning of the Plan; therefore, she did not suffer a "reduction in salary or bonus opportunity." Id. at 55. The Committee considered Smith's "salary

or bonus opportunity" in the aggregate and prospectively, examining Smith's total opportunity (in the future) to earn compensation in any form, and comparing this opportunity to her actual earnings during the previous year. Smith appealed the Committee's decision, arguing that it conflicted with the Plan's purpose and that the Committee's prospective interpretation of "reduction in salary or bonus opportunity" was incorrect and speculative.

The Committee affirmed its denial of Smith's claim for benefits, reiterating that "the opportunity for Ms. Smith to earn a higher compensation amount was enhanced and not decreased." Id. at 92. The Committee again interpreted the "reduction in salary or bonus opportunity" provision prospectively and in the aggregate, comparing what Smith "could have earned" under the new formula to the total compensation she had previously earned. Id. at 93. The Committee concluded that Smith's "salary and bonus opportunity was enhanced, not decreased" under the new plan. Id.

Smith filed this suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (2000), alleging that the Plan wrongfully denied her benefits in violation of § 1132(a)(1)(B). The Plan filed a motion for summary judgment, arguing that the Committee's decision to deny benefits was entitled to deference. The District Court denied the motion, holding that the Committee abused its discretion when it unreasonably denied Smith benefits. The Court reasoned that a reduction in either Smith's (1) salary or (2) bonus opportunity made her eligible for benefits and that the Committee's interpretation ignored the plain language and intent of the Plan. The District Court concluded that Smith suffered a reduction in salary because her guaranteed salary was replaced with a draw against commissions. Smith then filed a motion for summary judgment seeking severance benefits owed to her. The District Court awarded Smith $189,686.06. The Plan appeals the District Court's eligibility determination and, alternatively, its calculation of benefits owed to Smith.

We review the District Court's order granting summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party and affirming if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Johnson v. AT&T Corp., 422 F.3d 756, 760 (8th Cir. 2005). When "a plan gives the administrator 'discretionary authority to determine eligibility for benefits,'" the administrator's decision is reviewed for abuse of discretion. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).[1] The inquiry under the abuse-of-discretion standard is whether the plan administrator's decision was reasonable. Bruch, 489 U.S. at 111. "A plan administrator's decision is reasonable if a reasonable person could have, based upon the same evidence, reached a similar decision. . . . If the plan administrator's decision offers a reasonable explanation, the decision should not be disturbed even if another reasonable, but different, interpretation may be made." Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1199 (8th Cir. 2002) (internal quotations and citation omitted). In other words, a district court cannot overrule a plan's decision simply because it disagrees with that decision. Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180 (8th Cir. 2001).

Whether a plan administrator's decision to deny benefits is reasonable requires consideration of: (1) whether the interpretation is consistent with the plan's goals; (2) whether the interpretation renders any plan language meaningless or internally inconsistent; (3) whether the interpretation conflicts with ERISA requirements; (4) whether the administrator has consistently interpreted the relevant terms; and (5)

---

[1]A plan administrator's decision may be subject to de novo review when the administrator operates under a conflict of interest or implements flawed procedures. See Woo, 144 F.3d at 1160. The parties argued for different standards of review in the District Court, but on appeal Smith does not contest that the applicable standard of review is the abuse-of-discretion standard.

whether the interpretation is contrary to the plan's clear language. <u>Finley v. Special Agents Mut. Benefits Ass'n</u>, 957 F.2d 617, 621 (8th Cir. 1992).

This case centers on the Committee's interpretation of the phrase "reduction in salary or bonus opportunity." Under the Plan's terms, Smith qualifies for benefits if, after a "Change in Control,"[2] Smith resigned for "Good Reason," which includes a "reduction in [Smith's] salary or bonus opportunity." Appellant's App. at 18. Smith claims that she is eligible for benefits because she suffered a reduction in salary—under the UTI compensation formula she received an annual guaranteed salary of $51,199.20—while under the Fox compensation formula she received no guaranteed salary and instead received a draw against future commissions. Smith alternatively argues that under the Committee's interpretation, she is still entitled to benefits because her total compensation decreased by $24,290.54 from 2001 to 2002. Conversely, the Plan contends that Smith is not eligible for benefits because her opportunity for total compensation increased after the sale. Based on Fox's estimates for account executives, Smith's projected earnings opportunity for 2002 (including commissions and bonuses) was $174,562—an increase from Smith's 2001 total compensation of $173,973.[3]

Smith argues that the plain meaning of the phrase "reduction in salary or bonus opportunity" is unambiguous—"or" operates disjunctively so that the phrase means either: (1) a reduction in salary or (2) a reduction in bonus opportunity. Therefore, Smith assails the Committee's interpretation as contrary to the Plan's plain meaning and intent, resulting in an abuse of discretion. The Plan argues that the Committee's

---

[2]The parties agree that a "Change of Control" as defined in the Plan occurred when Fox acquired KMSP-TV.

[3]In April 2002, Fox projected the earnings opportunities for all account executives. Of the twelve projections, one account executive's projected earnings opportunity was less than his 2001 total compensation.

"holistic" interpretation of "opportunity," which it defines as an employee's "potential" earnings opportunity, is reasonable. Appellant's Br. at 26, 30, 40. Because the Committee possesses the "sole discretion" to interpret Plan terms, the Plan asserts that the Committee's interpretation was entitled to deference under the abuse-of-discretion standard. Appellant's App. at 23. We agree that the Committee's interpretation was entitled to deference and hold that the District Court erred in ruling that the Committee abused its discretion.

After considering the Finley factors, we are convinced that the Committee's interpretation was reasonable. First, the interpretation was consistent with the Plan's goals—specifically the goal of providing economic security to employees. By considering an employee's total earnings opportunity rather than simply calculating the employee's salary, the Plan will provide benefits to those employees who are truly in danger of becoming economically insecure rather than to each employee whose compensation formula is amended to reduce only her salary. It appears obvious that an employee who experiences a reduction in salary but also receives a greater opportunity for commissions may maintain the economic security that the Plan was designed to protect. Considering that account executives are often compensated primarily through commissions rather than by salaries, the Committee's broad examination of Smith's overall economic security was reasonable.

Second, the Committee's interpretation did not render any Plan language meaningless. The interpretation does make the word "opportunity" paramount within the phrase "a reduction in salary or bonus opportunity," but this does not necessarily render the remaining language meaningless. "Salary" and "bonus" are still critical parts of the employee's earnings opportunity—the Committee examines them collectively in its calculation of earnings opportunity.

Third, the Committee's interpretation does not conflict with ERISA requirements. ERISA requires a "full and fair review" of both the denial of a claim

-6-

for benefits and an appeal from that denial. 29 U.S.C. §1133(2); 29 C.F.R. § 2560.503-1(h). Smith was allowed to submit written comments, documents, records, and other information to the Committee; she was provided the same in a timely manner; and the Committee duly considered her arguments before making its determination.

Fourth, the Committee has consistently interpreted the phrase "reduction in salary or bonus opportunity." One month prior to initially denying Smith's claim, the Committee interpreted this phrase in precisely the same manner. While Smith may disagree with this interpretation, the Committee has not been shown to be inconsistent.

Fifth, the interpretation is not contrary to the Plan's clear language. The Committee's interpretation turns on defining "opportunity" prospectively. We may turn to dictionary definitions of a plan term when the plan is silent on its definition. Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 643–44 (8th Cir. 1997). Webster's Dictionary defines "opportunity" as "an advantageous circumstance or combination of circumstances [especially] when affecting security [or] wealth." Webster's Third New Int'l Dictionary (Unabridged) 1583 (1981). Defining the phrase "salary or bonus opportunity" as the potential combination of compensation components, such as a salary *and* bonuses, does not conflict with the Plan's language.

This conclusion may be somewhat counterintuitive, as the Plan's language appears to be disjunctive rather than conjunctive. The competing conclusion—that the phrase must be read in the disjunctive—is reasonably debatable, however, as courts have recognized the principle of contract interpretation that the terms "and" and "or" may be interchanged, in context, to carry out the parties' intent and the agreement's purpose. See Dumont v. United States, 98 U.S. 142, 143 (1878) ("The word 'or' is frequently construed to mean 'and,' and vice versa, in order to carry out the evident intent of the parties."); Noell v. American Design, Inc., Profit Sharing Plan,

764 F.2d 827, 833 (11th Cir. 1985); Manson v. Dayton, 153 F. 258, 269 (8th Cir. 1907). Stated another way, "courts need not mechanically interpret every 'or' as disjunctive, but rather . . . courts should interpret the word 'or' according to context." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 450 F.3d 1257, 1265 (11th Cir. 2006) (citations omitted). This principle of interpretation supports the conclusion that the Plan's interpretation was reasonable. Although it may be reasonable to disagree with the Plan's interpretation, our task as a reviewing court is not to substitute our interpretation for the Committee's, but rather to ask if the Committee's interpretation was reasonable. Tillery, 280 F.3d at 1199. Although a reasonable person could conclude that Smith's interpretation is correct, a reasonable person could also conclude that the Committee's interpretation is correct. Accordingly, the Committee's interpretation of the Plan's language did not constitute an abuse of discretion.

Smith's alternative argument—that even under the Committee's interpretation she is entitled to benefits because her total compensation was reduced—also fails. The Committee's interpretation is prospective—it considers an employee's potential earnings opportunity—and does not simply compare an employee's actual compensation from year to year. Because her total earnings opportunity increased from 2002 to 2003, the Committee determined that Smith was not entitled to severance benefits under the Plan.

We conclude that the District Court erred in holding that the Committee abused its discretion by denying severance benefits to Smith. The Committee's interpretation was reasonable, was entitled to deference, and was not a wrongful denial of benefits. We reverse the District Court and affirm the Plan's denial of benefits. Because Smith is not entitled to benefits, the challenge to the District Court's calculation of the amount of benefits is moot.

SMITH, Circuit Judge, dissenting.

Because I believe that the district court properly concluded that the Committee abused its discretion when it unreasonably denied Smith benefits, I respectfully dissent.

The majority holds that each of the *Finley* factors weighs in favor of the Committee's interpretation of the Plan. Like both the district court and the magistrate judge, I conclude that the Committee's interpretation is contrary to the Plan's clear language and renders the word "or" meaningless.

This court has held that the fifth *Finley* factor should be given "significant weight." *Lickteig v. Business Men's Assur. Co. of Am.*, 61 F.3d 579, 585 (8th Cir. 1995) (citing *Callahan v. Rouge Steel Co.*, 941 F.2d 456, 460 (6th Cir.1991) (holding that the most important factor in considering whether denial of benefits was arbitrary and capricious is the language of the plan)). "[I]f the interpretation is unreasonable from the beginning, such an interpretation may still be arbitrary and capricious." *Morgan v. Mullins*, 643 F.2d 1320, 1324 n.4 (8th Cir. 1981).

"Under an abuse of discretion standard we do not search for the best or preferable interpretation of a plan term: it is sufficient if the [ ] interpretation is consistent with a commonly accepted definition." *Hutchins v. Champion Intern. Corp.*, 110 F.3d 1341, 1344 (8th Cir. 1997). "[W]e may not find the interpretation invalid merely because we disagree with it, but only if it is unreasonable. An interpretation is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him." *Id.* (internal citations and quotations omitted) (emphasis in original). "Recourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary. Words are to be given their plain and ordinary meaning as understood by a reasonable, average person." *Finley v.*

*Special Agents Mut. Ben. Ass'n, Inc.*, 957 F.2d 617, 622 (8th Cir. 1992) (internal citations and quotations omitted).

The dictionary defines "or" as "1.a. Used to indicate an *alternative*, usually only before the last term of a series . . . b. Used to indicate the second of two *alternative*s, the first being preceded by either or whether . . . c. Used to indicate the first of two *alternative*s . . . ." *The American Heritage Dictionary of the English Language, 1236* (4th ed. 2000) (emphasis added).

Contrary to the reasoning of the majority, none of these definitions suggest that the word "or" is synonymous with the word "and." Indeed, each of these definitions clearly defines "or" as a disjunctive, a choice between two alternatives. To hold otherwise, would "tax[ ] ordinary English syntax to the point of uncertainty." *Chevron Oil Co. v. Barlow*, 406 F.2d 687, 692 (10th Cir. 1969) (holding "or" should not be substituted for "and").

Therefore, a reasonable person would not interpret "salary or bonus opportunity" as "salary and bonus opportunity." Thus, the Committee's decision to use this "holistic" approach is contrary to the Plan's clear language. *See Marquette Gen. Hosp. v. Goodman Forest Indus.*, 315 F.3d 629, 633 (6th Cir. 2003) (holding in a similar ERISA case interpreting "any occupation or employment for wage or profit," that "the word 'or' does not also mean 'and.' Any other reading constrains the clear meaning of the language").

For similar reasons, I believe that the Committee's interpretation renders the word "or" meaningless. See *Hebert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799–800 (8th Cir. 2004) (analyzing whether an interpretation renders the Plan's "language internally inconsistent or meaningless and is not contrary to the SBC Plan's clear language"). Because the Committee's interpretation renders the word "or"

meaningless and is contrary to the Plan's clear language, I would affirm the judgment of the district court.

_____