Patricia **HANNA,** Plaintiff,

v.

**UNITED OF OMAHA LIFE INSURANCE COMPANY,** Defendant.

No.  4:07–cv–00038–JEG.

United States District Court, S.D. Iowa, Central Division.

April 1, 2008.

Dennis F. Chalupa, Brierly Charnetski LLP, Newton, IA, for Plaintiff.

Kermit B. Anderson, Finley Alt Smith Scharnberg Craig Hilmes & Gaffney PC, Des Moines, IA, for Defendant.

### ORDER

JAMES E. GRITZNER, District Judge.

Plaintiff Patricia Hanna (Hanna) seeks judicial review of an appeal from the denial of accidental death benefits by Defendant United of Omaha Life Insurance Company (United of Omaha) under an ERISA plan. This Court reviews the plan administrator's decision pursuant to 29 U.S.C. § 1132(a)(1)(B). Plaintiff is represented by her counsel Dennis F. Chalupa. Counsel for the Defendant is Kermit B. Anderson. The matter is submitted without oral argument on the administrative record and the briefs of the parties.

### I. BACKGROUND

The decedent, Brian K. Winchell (Winchell), was employed with Smith Jones Inc., d/b/a Midwest Manufacturing Co., and insured under a United of Omaha life insurance plan (the Plan). The Plan included life insurance and accidental death and dismemberment coverage for $25,000. Hanna, Winchell's mother, was the sole beneficiary under the Plan.

On the night of November 22, 2005, Winchell celebrated his birthday at a Newton, Iowa, bar. Eric Shatto (Shatto), Winchell's friend, picked Winchell up, and the two men proceeded to visit two other bars in Newton. Later in the evening, Winchell and Shatto picked up a female friend. The three companions traveled westbound in Shatto's car on Interstate 80 toward Des Moines. Winchell, a passenger in the car, continued to consume alcohol. Winchell attempted to grab the steering wheel, causing Shatto to pull over at mile marker 155 on westbound Interstate 80. Winchell jumped out of the car as it was moving at approximately 40 miles per hour. Winchell's companions assisted Winchell back into the car, at which time Winchell's companions decided to return to Newton. During that time, Winchell grabbed the female companion in what was reported as "the private area." A.R. 107. Thereafter, Shatto stopped the vehicle at the 155 eastbound Interstate 80 on-ramp, where Win-

chell and Shatto engaged in a physical altercation outside the car. Winchell shattered the windshield on the passenger's side of the vehicle with his fists. Winchell's companions then departed in the car, leaving Winchell walking on the highway.

Winchell crossed Interstate 80, and at approximately 2:11 a.m., Winchell was observed near mile marker 160 in the middle of the south lane of westbound Interstate 80, trying to flag down traffic. At 2:14 a.m., Winchell was observed standing along the white fog line on the north side of westbound Interstate 80, with his hand fully extended out, as if he was attempting to hitchhike.

In the early morning hours of November 23, 2005, Jasper County Sheriff's officers were notified of a fatal collision at mile marker 160.025 on westbound Interstate 80. The officers arrived at around 2:30 a.m. and observed human remains scattered over the westbound lanes of Interstate 80; however, no vehicles were located in the immediate area. The officers found a wallet at the scene and identified Winchell.

The officers also found a piece of a large rectangular turn signal lens commonly used on semi-tractor trucks. The officers advised Jasper County Communications to put out a call in an attempt to locate a semi-tractor truck with front-end damage and a missing turn signal lens. The semi-truck was later found by Jasper County officers at the Waukee, Iowa, rest area. Officers identified the vehicle's driver as Dale A. Price (Price). When questioned about the accident, Price told the officers he thought he hit a deer. Price was placed under arrest. Price also told the officers he stopped at the rest area because he was tired. At that time, officers observed Price's vehicle and noticed the windshield was obstructed with objects

that blocked the driver's view of the right front corner of the tractor.

On November 23, 2005, Winchell's body was examined by the state medical examiner, who determined the cause of death to be "[m]ultiple blunt force injuries" and the "manner of death" as an "[a]ccident." A.R. 082. A subsequent toxicological analysis of Winchell's liver revealed a high concentration of alcohol (0.14%). A.R. 091.

On April 20, 2006, Hanna's attorney contacted Winchell's employer and enclosed documents to process Winchell's insurance benefits. The documents included benefit application forms, a police report of the accident, an autopsy and toxicology report, and a certified copy of Winchell's death certificate. On May 9, 2006, United of Omaha requested the enrollment card and latest beneficiary designation card from Winchell's employer. Winchell's employer provided this information on May 16, 2006.

On May 17, 2006, United of Omaha requested a technical investigations report from the Jasper County Sheriff. On May 23, 2006, United of Omaha informed Hanna that benefits were approved for the life insurance claim (not at issue in this case); however, additional information was requested for the accidental death benefits.

On June 6, 2006, United of Omaha informed Hanna the accidental death benefits were not payable. United of Omaha stated the following as its reason for denial:

> The *Exclusions* of the Accidental Death Benefits provision state that "We will not pay for any loss which: (*l*) is caused by You, and is the result of injuries You receive, while intoxicated." The *Definitions* state that "Intoxicated means blood alcohol level at the time of death or dismemberment that equals or exceeds the legal limit for operating a motor vehicle in the jurisdiction in which the loss occurs."

We have reviewed information received from the Jasper County Sheriff's Office and information from the State Medical Examiner's Office. According to this information Brian caused this accident and he was intoxicated at the time of his death. Therefore, the accidental death benefit under this policy is not payable.

A.R. 124.

On June 15, 2006, Hanna objected to the denial of the accidental death benefits stating, in part,

Whether or not Mr. Winchell was intoxicated at the time of his death, it is not relevant unless you can establish that it was caused by Mr. Winchell pursuant to the exclusion you make reference to in your letter of June 6, 2006. The exclusion specifically provides that you must show that it was caused by Mr. Winchell as opposed to him simply being killed while intoxicated.

A.R. 125. Hanna appealed the decision. On June 26, 2006, United of Omaha advised Hanna it was reviewing the matter.

On July 29, 2006, United of Omaha explained it was upholding its decision to deny the claim under the terms of the insurance policy, stating, in part,

We have reviewed the information from the Jasper County Sheriff's Office along with information from the State Medical Examiner's Office. According to the accident report, there was more than one report of Mr. Winchell walking on the roadway. Benefits under the accidental death provision of the plan are excluded for injuries caused by an insured while intoxicated. Therefore, since Mr. Winchell caused the accident and was intoxicated at the time of the death, no benefits are payable and our prior denial must be upheld.

A.R. 128.

On September 18, 2006, Hanna wrote a letter to United of Omaha, stating, in part,

In reading the report you will note that they attribute fault to the semi [truck] driver who failed to avoid Mr. Winchell. Once again, there are all kinds of reasons for Mr. Winchell to have been where he was other than something due to his own fault. Furthermore, your policy language requires that his death be caused "by you." I do not believe in a lawsuit you can be successful in defending your position.

A.R. 129. Hanna also forwarded a report from Hall-Wade Engineering Services, a company Hanna hired to investigate Winchell's death.

On September 26, 2006, United of Omaha advised it was reviewing the information provided. On October 13, 2006, United of Omaha informed Hanna it was again denying the accidental death benefits. United of Omaha repeated the statement from its prior communication in July:

We have reviewed Mr. Winchell's complete file, which includes information from the Jasper County Sheriff's Office along with the State Medical Examiner's Office. According to the information received, Mr. Winchell was walking on the roadway while intoxicated which resulted in his death. Since Mr. Winchell caused the accident and his blood alcohol level exceeded the legal limit for the State of Iowa, accidental death benefits are not payable and our prior denial must be upheld.

A.R. 140.

On November 14, 2006, Hanna informed United of Omaha she intended to file a lawsuit if United of Omaha did not honor the terms of the Plan. On December 5, 2006, United of Omaha explained under the terms and conditions of the Plan, its prior decision must be upheld. Accordingly, Hanna commenced this lawsuit in the Iowa District Court for Jasper County on January 4, 2007, asserting United of Oma-

ha's decision to deny benefits was not based on a reasonable interpretation of the Plan and was not supported by substantial evidence. United of Omaha removed the case to this Court on January 29, 2007.

## II. DISCUSSION

### A. Standard of Review

Both parties agree the Plan is covered by ERISA. ERISA permits a plan beneficiary to bring a civil action to recover benefits or enforce his rights under the plan. 29 U.S.C. § 1132(a)(1)(B) (2000); *Heaser v. Toro Co.*, 247 F.3d 826, 833 (8th Cir.2001). "ERISA itself does not specify a standard of review; however, the Supreme Court has held a reviewing court should use a *de novo* standard of review unless the plan gives the 'administrator or fiduciary discretionary authority to determine the eligibility for benefits or to construe the terms of the plan.'" *Cash v. Wal–Mart Group Health Plan*, 107 F.3d 637, 640–41 (8th Cir.1997) (quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 897 (8th Cir.1996), *abrogated on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989))). Where a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations, the Court applies an abuse of discretion standard to the administrator's decision. *See Hamilton v. Standard Ins. Co.*, 516 F.3d 1069, 1073 (8th Cir.2008).

An "administrator's interpretation of uncertain terms in a plan 'will not be disturbed if reasonable.'" *King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir.2005) (quoting *Bruch*, 489 U.S. at 111, 109 S.Ct. 948). "This standard reflects the Eighth Circuit's 'general hesitancy' to interfere with the administration of an ERISA benefit plan." *Davidson v.*

*Wal–Mart Assocs. Health & Welfare Plan*, 305 F.Supp.2d 1059, 1082 (S.D.Iowa 2004) (citing *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir.1998); *see also Smith v. Unum Life Ins. Co. of Am.*, 305 F.3d 789, 794 (8th Cir.2002)) ("A court should be hesitant to interfere with the administration of an ERISA plan.")

In the Eighth Circuit, two tests are relevant when analyzing whether a plan administrator abused its discretion and made an arbitrary and capricious decision. *See King*, 414 F.3d at 999. The first test is whether the plan administrator's interpretation of the term was reasonable and requires the application of the five-factor test enunciated in *Finley v. Special Agents Mut. Benefit Ass'n Inc.*, 957 F.2d 617, 621 (8th Cir.1992). *Id.* The second test is whether the plan administrator reasonably applied its interpretation of the term to the facts of the claim and requires the decision to be adequately supported by the evidence on record. *See Davidson*, 305 F.Supp.2d at 1082 (citing *Donaho*, 74 F.3d at 898–901).

Both Hanna and United of Omaha agree the plan at issue confers discretionary authority on United of Omaha. Both parties also agree the "abuse of discretion" standard applies.

The five *Finley* factors are (1) whether the plan administrator's interpretation is consistent with the goals of the policy, (2) whether the interpretation renders any language in the policy meaningless or internally inconsistent, (3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute, (4) whether the plan administrator has interpreted the word consistently, and (5) whether the interpretation is contrary to the clear language of the policy. *See Finley*, 957 F.2d at 621. An administrator's "decision is reasonable if a reasonable person *could* have reached

a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Donaho,* 74 F.3d at 899. If the administrator offers a reasonable explanation, "the decision should not be disturbed even if another reasonable, but different, interpretation may be made." *Id.* (citing *Krawczyk v. Harnischfeger Corp.,* 41 F.3d 276, 279 (7th Cir.1994)).

"Put another way, the [administrator's] decision need not be the only sensible interpretation, so long as its decision offer[s] a reasoned explanation, based on the evidence, for a particular outcome." *Delta Family–Care Disability & Survivorship Plan v. Marshall,* 258 F.3d 834, 841 (8th Cir.2001) (quoting *Donaho,* 74 F.3d at 899). In making its determination, "a court normally gives plan administrators considerable leeway to interpret and apply plan rules." *Davidson,* 305 F.Supp.2d at 1081 (quoting *Allison v. Wellmark, Inc.,* 153 F.Supp.2d 1023, 1027 (N.D.Iowa 2001)). Yet in this circuit, an administrator abuses its discretion in interpreting a plan if its interpretation is "extremely unreasonable." *See Kennedy v. Ga.-Pac. Corp.,* 31 F.3d 606, 609 (8th Cir.1994).

■ Concerning the second test, in determining if an administrator's fact-based determinations are reasonable, the reviewing court must look to see whether the plan administrator's decision was supported by substantial evidence. *Donaho,* 74 F.3d at 900. Under the substantial evidence standard of review, "so long as the [plan administrator's] findings are *reasonable,* they may not be displaced on review even if the court might have reached a different result had the matter been before it *de novo.*" *Id.* (quoting *Laro Maint. Corp. v. NLRB,* 56 F.3d 224, 229 (D.C.Cir.1995)). Substantial evidences equates to "more than a scintilla but less than a preponderance." *Schatz v. Mut. of Omaha Ins. Co.,* 220 F.3d 944, 949 (8th

Cir.2000) (citing *Donaho,* 74 F.3d at 898–901).

In conducting a reasonableness review under the abuse of discretion standard, the Court normally is confined to review the information before the administrator at the time of the claim decision. *Davidson,* 305 F.Supp.2d at 1082 (citations omitted). This limitation is imposed to "ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." *Id.* (quoting *Cash,* 107 F.3d at 641–42) (quoting *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir.1993)).

Here, the Plan confers discretionary authority to the plan administrator, stating, "the Policyholder grants United of Omaha Life Insurance Company the discretion and the final authority to construe and interpret the policy." A.R. 045. Therefore, the decision of the Plan's administrator must be upheld if supported by a reasonable interpretation of the Plan and substantial evidence. *See Donaho* 74 F.3d at 899–900.

**B. Reasonable Interpretation of the Plan's Term**

Hanna alleges United of Omaha's decision to deny benefits is not based on a reasonable interpretation of the Plan. This argument focuses on an exclusion stating the Plan "will not pay for any loss which (*l* ) is caused by You, and is the result of injuries You receive, while Intoxicated." The term "caused" is not defined in the Plan.

Hanna interprets "caused" as "proximate cause" and asserts Winchell was not the proximate cause of his death. United of Omaha interprets the exclusion to require a causal relationship between the conduct of the insured and the death. United of Omaha determined Winchell's actions caused his death because Winchell

was standing in an unlighted section of the travel portion of Interstate 80 in dark clothing at 2:00 a.m., while intoxicated.

The Court addresses this dispute employing the five-factor *Finley* test. *Cash,* 107 F.3d at 641. Courts should apply all five factors or explain why a particular factor is inapplicable. *Id.* Although, Hanna does not address the first four factors, the Court will follow the advice of precedent and analyze all five.

The first *Finley* factor is "whether the Committee's interpretation was consistent with the goals of the plan." *Finley,* 957 F.2d at 621. According to United of Omaha, "the goal of the Plan is to provide life, accidental death and dismemberment benefits to all covered employees in the event of a catastrophic event." Def.'s Tr. Br. 9. United of Omaha asserts the Plan contains exclusions that have the advantage of providing better coverage for more people.

The administrator's determination that the Plan required the exclusion of Hanna's claim appears to be consistent with the Plan's goal. *See Tillery v. Hoffman Enclosures, Inc.,* 280 F.3d 1192, 1199–1200 (8th Cir.2002) (concluding a plan may exclude payments as it has the advantage of providing better coverage for more people); *Cash,* 107 F.3d at 643 (concluding the obvious purpose for the exclusion was to insure the actuarial soundness of the plan); *Davidson,* 305 F.Supp.2d at 1086 (finding where a plan's purpose is to benefit all covered employees, paying an uncovered claim does not further that purpose).

The second *Finley* factor is "whether the interpretation renders any plan language meaningless or inconsistent." *Finley,* 957 F.2d at 621. Here, the Plan has twelve exclusions, three of which exclude coverage for injuries caused by the policyholder. United of Omaha's interpretation of "caused" can be applied consistently to the three similar exclusions; thus, its interpretation does not render language of

the Plan meaningless. *See Davidson,* 305 F.Supp.2d at 1087 (concluding the committee's interpretation of the exclusion of benefits for certain breast surgeries did not affect other plan language and thus did not make the plan meaningless or inconsistent).

The third *Finley* factor, "whether the interpretation conflicts with the requirements of the ERISA statute," *Finley,* 957 F.2d at 621, appears to raise no material issue. ERISA does not require an employer to offer accidental death benefits; therefore, the level of benefits to be provided is within the control of the private party creating the Plan. *See Davidson,* 305 F.Supp.2d at 1087 (citing *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 511, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (finding it is "private parties, not the Government, [that] control the level of benefits"); *Waller v. Hormel Foods Corp.,* 120 F.3d 138, 140 (8th Cir.1997) (finding ERISA leaves the level of plan benefits conferred to the parties creating the plan)). Furthermore, "employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.* (quoting *Curtiss–Wright Corp.,* 514 U.S. at 78, 115 S.Ct. 1223).

"ERISA does, however, require that administrators provide benefits to participants in accordance with the plain language of the plan." *Id.* (citing 29 U.S.C. § 1104(a)(1)(D)). Here, the exclusion explicitly states the policyholder will not receive benefits if he caused his own death while intoxicated. United of Omaha consistently, in its correspondences with Hanna and in its trial brief, relied on the plain language of the Plan. The fourth factor is "whether the administrator interpreted the words at issue consistently." *Finley,* 957

F.2d at 621. The administrator has not been shown to be inconsistent in its interpretation of the Plan. *See Smith v. United Tele. Inc. Special Severance Plan,* 474 F.3d 1033, 1037 (8th Cir.2007).

The fifth factor, "whether the interpretation is contrary to the clear language of the plan," *Finley,* 957 F.2d at 621, is at the core of this dispute. The Plan exclusion states, "we will not pay for any loss which: (1) is caused by You, and is the result of injuries You receive, while Intoxicated." A.R. 124. Regarding 'intoxication,' the Plan states, "intoxication means blood alcohol level at the time of the death or dismemberment that equals or exceeds the legal limit for operating a motor vehicle in the jurisdiction in which the loss occurs." A.R. 022. "Caused" is not defined in the Plan. When a plan does not define the term in question, "recourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary." *Finley,* 957 F.2d at 622 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co.,* 919 F.2d 1343, 1350 (8th Cir.1990)). "[W]ords are to be given their plain and ordinary meaning as understood by a reasonable, average person." *Cash,* 107 F.3d at 643 (quoting *Finley,* 957 F.2d at 622). Hanna concedes Winchell was intoxicated within the definition of the policy at the time of the accident. Therefore, this case turns on the interpretation of the policy term "caused".

Hanna interprets "caused" as "proximate cause" and argues although evidence suggests Winchell's actions may have been contributory, the evidence before United of Omaha did not support that Winchell's actions were a "proximate cause." While not fully accepting the comparison to legal causation, United of Omaha follows that argument and asserts an actor's conduct is a proximate or legal cause of harm if it is a substantial factor in producing damage when the damage would not have hap-pened except for the conduct. *See Aetna Cas. & Sur. Co. v. Leo A. Daly Co.,* 870 F.Supp. 925, 936 (S.D.Iowa 1994) (applying Iowa law and citing the Restatement (Second) of Torts, which uses the "substantial factor" test to help determine the existence of proximate or legal cause). Therefore, United of Omaha contends there can be more than one proximate cause for Winchell's injuries. *See Welte v. Bello,* 482 N.W.2d 437, 442 (Iowa 1992). United of Omaha further argues, because Winchell was intoxicated while standing in an unlighted section of Interstate 80 at 2:00 a.m. and dressed in dark clothing, Winchell's actions were both a substantial factor and a but-for cause of his own death.

As stated above, courts have turned to the dictionary to aid its analysis. *See Cash,* 107 F.3d at 643–44; *see also Smith,* 474 F.3d at 1037 ("We may turn to dictionary definitions of a plan term when the plan is silent on its definition."); *Hutchins v. Champion Int'l Corp.,* 110 F.3d 1341, 1344 (8th Cir.1997) ("Ordinary meaning is determined by the dictionary definition of the word and the context in which it is used."); *Finley,* 957 F.2d at 622 ("In determining what 'confrontational situation' means, we look to the dictionary definitions of 'confrontation' and 'confront.' ").

United of Omaha defined "cause" as "a reason for an action or condition" or "something that brings about an effect or a result." *Merriam–Webster Online Home Page,* http://www.merriam-webster.com. United of Omaha defined "caused" as "to serve as a cause or occasion of." *Id.* Defining the word "caused" in this manner does not conflict with the Plan's language. *See Smith,* 474 F.3d at 1037. The ordinary dictionary definition of "cause" or "caused" implies there can be more than one cause of an event and several "reasons for an action or a condition." *See Brumm v. Bert Bell NFL Ret. Plan,* 995 F.2d 1433,

1440 (8th Cir.1993) (defining "injury" as an " 'act or a result involving an impairment or destruction of . . . health,' " therefore "injury" could refer to either "a single injury (act) or a cumulative one (result)") (quoting *Webster's Third New International Dictionary* (1986)). Here, the fact the dictionary defines "cause" as "something that brings about an effect or result" implies the term can refer to either a single act (an effect) or a cumulative one (result).

■ While it is true the truck driver hit Winchell, it is also true, as United of Omaha asserts, Winchell's act of walking on the highway is a "reason for" and "served to cause" his death. "Although it may be reasonable to disagree with the Plan's interpretation, our task as a reviewing court is not to substitute our interpretation for the [administrator's], but rather to ask if the [administrator's] interpretation was reasonable." *Smith*, 474 F.3d at 1037–38; *see also Hutchins*, 110 F.3d at 1344, ("Under an abuse of discretion standard we do not search for the best or preferable interpretation of a plan term: it is sufficient if the [administrator's] interpretation is consistent with a commonly accepted definition."). Furthermore, although a reasonable person could conclude Hanna's interpretation is correct, a reasonable person could also conclude the administrator's interpretation is correct. *See Smith*, 474 F.3d at 1038. The Plan administrator's interpretation is not only consistent with a common definition of essential terms, but it is also consistent with the underwriting concept that the Plan is not intended to provide this additional coverage for persons whose own conduct has placed them at great peril. Therefore, the administrator's interpretation of the Plan's language did not constitute an abuse of discretion.

The Court is not persuaded by Hanna's reliance on *King v. Hartford Life & Acci-* *dent Ins. Co.*, 414 F.3d 994, 1004 (8th Cir.2005). In *King*, the insurance policy had an exclusion barring claims involving "any intentionally self-inflicted injury, suicide, or attempted suicide." *Id.* The defendant in *King* argued the insured's alcohol intoxication was itself an "intentionally self inflicted injury." *Id.* The appellate court rejected the insurance company's argument as an unreasonable interpretation of the plan. *Id.* The *King* court noted, "[T]he most natural reading of the exclusion for injuries contributed to by 'intentionally self-inflicted injury, suicide, or attempted suicide' does not include injuries that were unintended by the participant, but which were contributed to by alcohol intoxication." *Id.* The *King* court also rejected the administrator's interpretation because the administrator provided several *post hoc* rationales differing from the stated basis for denying benefits. *Id.* Furthermore, the *King* court determined the interpretation was a "startling construction" of the plan and rendered other important policy language meaningless. *Id.*

Upon thorough review, the Court must conclude *King* is fundamentally distinguishable from the present case and thus does not lend support for Hanna's claim. In *King*, the exclusion clause included the words "intentionally self-inflicted injury;" however, the exclusion in this case did not require Winchell's actions to be intentional. Furthermore, United of Omaha does not assert Winchell intended his injuries. Also, in this review, United of Omaha has not asserted several *post hoc* rationales differing from the stated basis for denying benefits. The rationale United of Omaha provided to Hanna in the denial letters is the same rationale it relies upon now. In addition, United of Omaha's interpretation is not a "startling construction" of the Plan and does not render other plan language meaningless. To the contrary, if the administrator reads "intentional" into the ex-

clusion at issue, it would render meaningless two other exclusions that specifically require intentional actions. *See* A.R. 024. Therefore, *King* is not applicable to the present case.

Under the test set forth in *Finley*, the Plan administrator's interpretation was reasonable; therefore, United of Omaha did not abuse its discretion in concluding the exclusion was applicable.

### C. Whether Denial of the Benefits is Supported by Substantial Evidence

■ In evaluating whether a plan administrator's fact-based determinations are reasonable, courts should look to whether the decision is supported by substantial evidence. *Donaho*, 74 F.3d at 900. A plan administrator's decision must be upheld if a reasonable mind would find the decision was adequately supported by the evidence on record. *See id.* The reasonableness of a plan administrator's decision can be determined by both the quantity and quality of the evidence supporting it. *Id.* Under the substantial evidence standard of review, so long as the plan administrator's findings are reasonable, they may not be displaced upon review even if the court might have reached a different result had the matter been before it de novo. *Id.* (citing *Laro*, 56 F.3d at 229). *See also Bates v. Chater*, 54 F.3d 529, 532 (8th Cir.1995) ("[E]ven if inconsistent conclusions may be drawn from the evidence, the decision will be affirmed where the evidence as a whole supports either outcome.").

Here, substantial evidence in the record supports the administrator's decision. The plan administrator considered the Certificate of Death, the Iowa Department of Transportation Investigating Officer's Report of Motor Vehicle Accident, the State Medical Examiner's Report of Autopsy, the Jasper County Sheriff's Office Acci-

dent Investigation and Investigating Officer's Report and related documentation, and the Hall–Wade Engineering Services Report.

The Jasper County Sheriff's Investigating Officer's Report stated, "Winchell was observed at approximately 2:11 a.m. in the middle of the south lane of westbound Interstate 80, and then again at 2:14 a.m. standing along the white fog line of the north side of westbound Interstate 80." A.R. 114. According to the Jasper County Officer's Report, Winchell, was wearing dark clothing, and witnesses who observed him prior to the accident indicated they saw him at the very last second.

The Jasper County Officer's Report also indicated the "pre-impact" location of Winchell was "located near the middle of the westbound roadway on Interstate 80." A.R. 112. The Jasper County Officer's Report noted Winchell was standing in an unlighted stretch of Interstate 80 at the time of the accident. Concerning the cause of the accident, the Jasper County Officer's Report stated, "[t]his collision sequence occurred *due to* the state of intoxication of Brian Winchell while walking around the 160.25 mile marker westbound Interstate 80." A.R. 114 (emphasis added).

The Deputy State Medical Examiner's report noted Winchell was walking at night eastbound on the westbound lane of Interstate Highway 80, and a toxicological analysis of the liver revealed a high concentration of ethanol (0.14%). The Iowa Department of Transportation Investigating Officer's Report of Motor Vehicle Accident confirms the location of the "first harmful event" occurred in the roadway. A.R. 079. Also, the Iowa DOT report listed "pedestrian action" as the "major contributing circumstance," and the accompanying diagram depicts Winchell

**1074**

standing in the middle of the roadway at the time of impact.  A.R. 080.

The Hall–Wade Report provided by Hanna lends support to the administrator's determination.   The Hall–Wade Report states, "it is apparent Mr. Winchell was located within the travel portion of the highway located West of Newton, Iowa in Jasper County," and Winchell was "wearing dark clothing."  A.R. 132.  The Hall–Wade Report acknowledges Winchell was "legally intoxicated at the time of the incident with an estimated blood alcohol content of 0.14%."  A.R. 132.  Furthermore, in the "Opinions/Conclusion" section, the Hall–Wade Report states,

> the collision most likely occurred between the center line and the right-hand shoulder (fog line) given the observable debris and bloodstains on the roadway and statement of the truck performing a lane change.  It is likely that Mr. Winchell had crossed the fog line into the traveled roadway based on the witness statements of Mr. Tony Smith and Ms. Patty DeKaad.

A.R. 136–137.  The Hall–Wade Report further concluded, "[t]he inattentiveness and/or fatigue of Mr. Price as well as the obstruction of view were contributory causes to this fatality accident."  A.R. 138.  As explained above, the plan administrator reasonably interpreted "caused" to include the actions of more than one individual.

The plan administrator reviewed evidence indicating Winchell's actions contributed to his death, including intoxication and standing directly in the travel portion of the westbound lane of Interstate 80 at night.  A reasonable mind could find the plan administrator's decision was supported by substantial evidence; therefore, the administrator's decision is upheld.

## III.  CONCLUSION

The Court finds that the plan administrator did not abuse its discretion because it reasonably interpreted the term "caused," and its decision to deny benefits was supported by substantial evidence.  Accordingly, the plan administrator's decision must be **affirmed.**   The Clerk of Court is directed to enter Judgment in favor of the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**