# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1576
No. 16-1580
No. 16-1712

_____

American Chemicals & Equipment Inc. 401 (K) Retirement Plan

*Plaintiff - Appellant/Cross Appellee*

v.

Principal Management Corporation

*Defendant - Appellee/Cross Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 11, 2017
Filed: July 24, 2017

_____

Before RILEY, Chief Judge,[*] LOKEN and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

_____

[*]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

Section 36(b) of the Investment Company Act (ICA) of 1940, 15 U.S.C. § 80a-35(b), provides that an action may be brought "by a security holder of [a] registered investment company on behalf of such company, against [its] investment adviser . . . for breach of fiduciary duty in respect of [the] compensation [for services] or payments [of a material nature] paid by [the] registered investment company or by the security holders thereof to [its] investment adviser." American Chemicals & Equipment 401(K) Retirement Plan (ACE) invested in six LifeTime Funds, which are mutual funds created by Principal Funds Incorporated (PFI). The LifeTime Funds are structured as target-date "funds of funds," meaning each fund invests in a portfolio of other mutual funds designed to maximize performance for investors targeting a specific retirement date. ACE sued the LifeTime Funds' investment adviser, Principal Management Corporation (PMC), for breach of its § 36(b) fiduciary duty to the LifeTime Funds, seeking to recover "unfair and excessive" fees. ACE explicitly disclaimed a challenge to the excessiveness of the adviser fees that the LifeTime Funds paid directly to PMC. Instead, ACE based its excessiveness challenge on "all or part of" the adviser fees paid to PMC by the funds in which the LifeTime Funds invest, fees which indirectly reduced the net asset values of the LifeTime Funds. The district court[1] entered judgment in favor of PMC, concluding that ACE lacks statutory standing under § 36(b) to challenge the fees in question. Reviewing this decision *de novo*, we affirm.

## I.

**A.** Responding to investment company mismanagement and abuse, Congress enacted the ICA in 1940 "to impose controls and restrictions on the internal management of investment companies." Burks v. Lasker, 441 U.S. 471, 478 (1979) (emphasis and quotation omitted). "A mutual fund is an open-end investment

---

[1]The Honorable John A. Jarvey, Chief Judge of the United States District Court for the Southern District of Iowa.

company" subject to the ICA's controls and restrictions.  Inv. Co. Inst. v. Camp, 401 U.S. 617, 625 n.11 (1971).  A typical mutual fund sells shares to investors and then invests the proceeds of those sales in a portfolio of securities such as stocks or bonds.  A mutual fund structured as a "fund of funds," such as the LifeTime Funds, purchases shares of other, often publicly-traded mutual funds (commonly referred to as the "acquired" or "underlying" funds, while the fund of funds is referred to as the "acquiring" fund).  For most mutual funds, including funds of funds, an investment adviser creates the mutual fund, selects the fund's directors, manages the fund's investments, and provides other services.

To curb perceived abuses,[2] including the charging of duplicative fees,  the ICA initially limited mutual funds to buying up to five percent of another mutual fund's shares.  See 15 U.S.C. § 80a-12(d)(1) (1940).  It also authorized the Securities and Exchange Commission "to bring an action . . . alleging that a person serving or acting [as an investment adviser] has been guilty . . . of gross misconduct or gross abuse of trust in respect of any registered investment company." § 80a-35 (1940).  After World War II, "investment companies enjoyed enormous growth."  Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 537 (1984).  In 1970, Congress amended the ICA to bolster shareholder protection by giving disinterested mutual fund directors increased responsibilities and by enacting § 36(b), which "imposed upon investment advisers a 'fiduciary duty' with respect to compensation received from a mutual fund . . . and granted individual investors a private right of action for breach of that duty."  Jones v. Harris Assocs. L.P., 559 U.S. 335, 340 (2010).

The 1970 amendments also extended § 12(d)(1)'s restrictions on funds of funds investing to unregistered and foreign funds.  See § 80a-12(d)(1)(A)-(B).  Since 1970, however, Congress and the SEC have concluded that carefully regulated fund-of-

---

[2]See generally Sec. & Exch. Comm'n, Investment Trusts and Investment Companies, pt. I, ch. 1, H.R. Doc. No. 76-279 (1939).

funds structures offer advantages to small investors. Using its general exemption authority, § 80a-6(c), the SEC first allowed several large mutual fund complexes to create "affiliated" funds of funds free from the percentage restrictions in § 12(d)(1). See, e.g., Vanguard Special Tax-Advantaged Retirement Fund, Inc., Investment Company Release No. 14361, 1985 WL 548623 (1985). In 1996, Congress amended the ICA to codify these exemptions. With some restrictions, § 12(d)(1) now does not apply when the fund of funds and the underlying funds "are part of the same group of investment companies," defined as a group "that hold themselves out to investors as related companies for purposes of investment and investor services." § 80a-12(d)(1)(G)(i)(I), (ii).

Experience persuaded the SEC that the public disclosures of affiliated funds of funds limited the investor's ability to compare their management costs with other mutual funds by obscuring the indirect costs incurred from investing in other mutual funds. See Fund of Funds Investments, Proposed Rules, 68 Fed. Reg. 58,226, at 58,234 (Oct. 8, 2003). In 2006, the SEC promulgated a rule that requires funds of funds to disclose their "Acquired Fund Fees and Expenses," or AFFE. The rule, which formed the basis of ACE's Complaint, was "designed to provide investors with a better understanding of the actual costs of investing in a fund that invests in other funds." Fund of Funds Investments, Final Rule, 71 Fed. Reg. 36,640, at 36,645 (June 27, 2006) (codified at 17 C.F.R. § 274.11). The AFFE reflects the underlying funds' total expenses, including management fees, apportioned according to the percentage of shares that the fund of funds holds in the underlying funds and expressed as a percentage of the fund of funds' total assets. The AFFE discloses indirect costs the fund of funds incurs, including management fees paid by the underlying funds. It does not disclose payments made by the fund of funds.

**B.** ACE holds shares in six LifeTime Funds, which are affiliated funds of funds that invest in twenty-or-so underlying funds under the § 80a-12(d)(1)(G) exemption. PMC is the investment adviser for both the LifeTime Funds and the

underlying funds. Each LifeTime Fund pays PMC a management fee of 3 basis points (0.03% of the LifeTime Funds' total net assets) for its services to these funds of funds, which PMC pays to an affiliated sub-adviser, Principal Global Investors. PMC also calculates and discloses the AFFE for each LifeTime Fund in accordance with SEC disclosure requirements. In 2013, the AFFE of the six LifeTime Funds at issue ranged from 0.59% to 0.75% of the fund's total net assets. The management fees that the underlying funds pay directly to PMC for its advice and services to those funds are reflected in the LifeTime Funds' AFFE, weighted in accordance with the SEC's disclosure formula.

Count I of ACE's Complaint alleged that PMC breached its § 36(b) fiduciary duty by charging fees for advisory services that "are unfair, excessive, and were not negotiated at arm's length in light of all the surrounding circumstances." The Complaint alleged that ACE "does not challenge" the 3-basis-point management fee the LifeTime Funds pay directly to PMC. "Instead, [ACE] here challenges and seeks recovery of part or all of a fee charged to investors in the LifeTime Funds" that PMC calls the AFFE. As ACE's Reply Brief described this convoluted claim on appeal, for purposes of § 36(b) PMC received as "compensation" or "payments of a material nature" the AFFE's "revenue portion," that is, "the proportional share of the overall management fee that is attributable to PMC's management of the assets in the Underlying Fund owned by the LifeTime Funds." To recover on this claim, ACE has the burden to prove, based on consideration of all relevant procedural and substantive factors, that the fee was "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." Jones, 559 U.S. at 346-47; see Gallus v. Ameriprise Fin., Inc., 675 F.3d 1173, 1178 (8th Cir. 2012).

Ruling on PMC's motion for summary judgment, the district court held that ACE lacked a cause of action under § 36(b). As ACE was not challenging the 3-basis-point management fee the LifeTime Funds pay directly to PMC, and undisputed

evidence showed that the AFFE includes "fees charged by advisors to the Underlying Funds" and "does not reveal what shareholders in the LifeTime Funds pay" to PMC, the court concluded that ACE was in fact challenging fees *paid by* the underlying funds "at a level once removed from [ACE's] security interest." ACE admitted that it was not a security holder in the underlying funds, and § 36(b) "only allows security holders to challenge fees paid by the entity in which they have an interest." Am. Chems. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp., 2016 WL 7155791, (S.D. Iowa Feb 3, 2016).

The district court concluded that ACE lacked "statutory standing" under § 36(b) and dismissed the Complaint for lack of subject matter jurisdiction. The Supreme Court has occasionally referred to "statutory standing" as "effectively jurisdictional," but "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387 n.4 (2014) (quotation and emphasis omitted). "The question whether a federal statute creates a claim for relief is not jurisdictional." Nw. Airlines, Inc. v. Cty. of Kent, Mich., 510 U.S. 355, 365 (1994). Instead, "we ask whether [ACE] has a cause of action under" Section 36(b), which requires us to "apply traditional principles of statutory interpretation." Lexmark, 134 S. Ct. at 1387-88.

## II.

**A.** On appeal, ACE argues that the plain language of § 36(b) "authorizes shareholders of a fund of funds to bring an action on behalf of the fund to challenge excessive acquired fund fees that it pays to the investment adviser." ACE is admittedly a "security holder" in the LifeTime Funds, a "registered investment company." ACE has sued the LifeTime Funds' investment adviser, PMC, for breach of its § 36(b) fiduciary duty, and no party doubts that ACE falls within § 36(b)'s zone

of protected interests.  See Lexmark, 134 S. Ct. at 1388.  The question is whether ACE has asserted a claim in respect of compensation or payments "paid by" the LifeTime Funds to PMC.

ACE has abandoned its claim in the Complaint and to the district court that the AFFE "represents payments made by LifeTime Fund shareholders to [PMC]," a claim the summary judgment record established is factually wrong.  The AFFE is not "compensation for services."  It simply *estimates* the fund of funds' costs of investing in other funds.  Nor is the AFFE a "payment of a material nature" because no entity *pays* the AFFE.  As ACE's expert explained, the AFFE is "not even an actual fee.  It's a construct."  ACE now argues that a portion of the fees paid by the underlying funds to PMC were "compensation for services" or "payments of a material nature" (the operative words in § 36(b)) that were "paid by" the LifeTime Funds with respect to their investment in the underlying funds.[3]  Though worded differently, the argument has the same factual flaw.  Section 36(b) limits shareholder suits to breaches of fiduciary duty regarding compensation or payments *paid by* the mutual fund or its shareholders.  Here, the acquired fund fees at issue were *paid by* the underlying funds, which are separate investment companies, not by the LifeTime Funds in which ACE was a shareholder.  As with any enterprise, adviser fees and other costs reflected in the AFFE reduced the net asset value of the underlying fund paying the fees, which in turn reduced the value of the LifeTime Funds' shareholdings in the underlying fund.  But the mere reduction of an asset's value does not mean that the reduction was *paid by* the asset's investors.  To take an example from the corporate world, an increase in a subsidiary's operating expenses adversely affects the value of the parent corporation's investment, but the increased expense is not *paid by* the parent corporation or its shareholders.

---

[3]In other words, if the LifeTime Funds own twenty-five percent of an underlying fund and that underlying fund earned $100 in compensation for PMC, then PMC received $25 in compensation for managing the LifeTime Fund.

ACE argues the district court erred in concluding that ACE has no valid claim under § 36(b) because the acquired fund fees at issue were paid only "indirectly" by the LifeTime Funds. ACE asserts, without citation to any authority, that the court's direct payment requirement "does not exist in the language of the statute itself." Of course, this assertion is patently wrong -- § 36(b) is *expressly* limited to claims regarding compensation or payments of a material nature *paid by* the LifeTime Funds or its shareholders.

ACE argues that the district court's ruling "would allow excessive fees to be buried at the underlying fund level and render the fees immune from any challenge under § 36(b) where most or all of the underlying funds are held by the funds of funds." But "parading that horrible" does not apply to this case because the record shows that unaffiliated investors hold varying percentages of the outstanding shares of the underlying funds. Indeed, PMC suggests that, because ACE is not seeking relief on behalf of all underlying funds' shareholders, the relief ACE seeks as a LifeTime Funds shareholder would be contrary to SEC rules precluding preferential treatment of investors. See 17 C.F.R. § 270.18f-3(a)(1)(ii). In a different case, where the fund of funds in an affiliated fund of funds complex owned all the shares of the underlying funds, the disinterested directors of each fund would still have responsibility to rigorously review management fees, and the SEC would have authority to sue the investment adviser of any fund for breach of the § 36(b) fiduciary duty. In addition, Congress and to a great extent the SEC retain authority, repeatedly exercised in the past, to adjust the rules and exemptions governing fund of funds investment companies to protect individual mutual fund investors.

**B.** After filing the initial Complaint, ACE filed two substantively identical "anniversary" complaints reflecting the ICA's one-year statute of limitations. The third case was stayed pending the district court's summary judgment decision in the first two cases, which had been consolidated. When the district court granted summary judgment in the consolidated case, PMC moved for summary judgment in

the third, stayed case. In response, ACE abandoned its prior admission that it is not a shareholder of the underlying funds, a position taken to avoid adverse § 36(b) precedent rejecting the argument. See Curran v. Principal Mgmt. Corp., LLC, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011). ACE now argued that "because the LifeTime Funds and the underlying funds in which they invest are not distinct companies, but are part of a single registered investment company," it is a "security holder" in the only "registered investment company" that PMC manages, namely PFI, and therefore may assert this § 36(b) claim for PMC's alleged breach of fiduciary duty.

The district court granted summary judgment in the third case "[f]or the reasons articulated" in its prior order, without considering this new argument. ACE renews this belated argument on appeal. Similar to a motion for reconsideration, ACE introduced this argument only after the district court had granted summary judgment in the consolidated case, and the district court did not address the new argument. Accordingly, the issue was not preserved for appeal, see PFS Distrib. Co. v. Raduechel, 574 F.3d 580, 599 n.3 (8th Cir. 2009). We also conclude the argument is without merit. Only the SEC and "a security holder of [a] registered investment company" may bring suit under § 36(b). PFI is arranged as a "series company," meaning it is a single corporation that offers multiple investment options, with each option called a "series." Both courts and the SEC have concluded that, for a series company such as PFI, "each Underlying Fund should be treated as a 'registered investment company' for the purposes of applying § 36(b) because they are, for all practical purposes, separate mutual funds." Curran, 2011 WL 223872 at *2 n.3; see In re Mut. Funds Inv. Litig., 519 F. Supp. 2d 580, 588-89 (D. Md. 2007); Forsythe v. Sun Life Fin., Inc., 417 F. Supp. 2d 100, 117-18 (D. Mass 2006); SEC Inv. Mgmt. Guidance Update No. 2014-06 (Jun. 2014) ("Each series also is a separate investment company for purposes of the investor protections afforded by the [ICA]."). Because each mutual fund is a separate "registered investment company" and ACE has no security interest in the underlying funds, see 15 U.S.C. § 80a-2(36), ACE cannot sue

on behalf of a fund in which it lacks an interest. <u>Cf.</u> <u>Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.</u>, 677 F.3d 178, 185 (3d Cir. 2012).

The judgment of the district court is affirmed. Accordingly, the cross appeal and the motion to dismiss the cross appeal are dismissed or denied as moot.

_____