# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2784

_____

Ivan Mitchell; Melissa Mitchell

*Plaintiffs - Appellants*

v.

Blue Cross Blue Shield of North Dakota; Towner County Medical Center

*Defendants - Appellees*

------------------------------

Secretary of Labor

*Amicus on Behalf of Appellant(s)*

_____

No. 18-2890

_____

Ivan Mitchell; Melissa Mitchell

*Plaintiffs - Appellees*

v.

Blue Cross Blue Shield of North Dakota; Towner County Medical Center

*Defendants - Appellants*

------------------------------

Secretary of Labor

*Amicus on Behalf of Appellee(s)*

_____

Appeals from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 15, 2019
Filed: March 20, 2020

_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Appellants Ivan and Melissa Mitchell filed this action under the Employee Retirement Income Security Act of 1974 (ERISA) alleging that Blue Cross Blue Shield of North Dakota (BCBSND) abused its discretion by partially denying their claim for air-ambulance benefits under an employee health plan. The district court granted summary judgment in part to BCBSND and in part to the Mitchells. Because we conclude that BCBSND did not abuse its discretion by partially denying the Mitchells' claim, we affirm in part and reverse in part.

## I. Factual Background

In 2013, Valley Med Flight, Inc. (VMF), a provider of air-ambulance services, terminated its participation agreement with BCBSND following a dispute over BCBSND's reimbursement rates. On January 10, 2014, BCBSND sent participating healthcare providers a memorandum informing them that VMF had terminated its

-2-

participation agreement and that, as a result, "patients could be exposed to collection of fees in excess of the payment made by [BCBSND]. In the case of air ambulance services, this can result in a huge expense." BCBSND encouraged healthcare providers to use participating air-ambulance service providers rather than VMF to avoid exposing patients to this expense.

On January 13, 2014, BCBSND sent participating healthcare providers an Ambulance Reimbursement Notice stating that, effective January 1, 2014, "[a]ir ambulance rates for HCPCS codes A0430, A0431, A0435 and A0436 have been increased and are based on 150 percent of the 2013 Medicare rural air ambulance rates." The 2014 rate for code A0430, a base-rate fee, was $6,601.01. The 2014 rate for code A0435, a mileage fee, was $18.72 per mile.

On January 15, 2014, Melissa Mitchell was admitted to the Towner Medical Center emergency room in Cando, North Dakota with complaints of cardiac distress. The attending physician decided to transfer her to a hospital in Grand Forks, North Dakota for "a higher level of care for cardiology consult." Due to weather and road conditions, it was necessary to use an air ambulance to transport Ms. Mitchell. VMF provided the transportation and administered intravenous fluids during the flight. BCBSND does not dispute that air-ambulance transportation was medically necessary or that Ms. Mitchell did not choose VMF as the service provider.

At the time, Ms. Mitchell was enrolled through her husband's employer in an employee welfare benefit plan (the Plan), which was "fully insured by BCBSND and issued by BCBSND." She signed an authorization and assignment permitting VMF to submit a claim directly to BCBSND for reimbursement under the Plan.

The Plan provides that BCBSND will pay 80% of the Allowed Charge for medically necessary Ambulance Services (after any deductible).[1] The Plan defines "Allowance or Allowed Charge" as "the maximum dollar amount that payment for a procedure or service is based on as determined by BCBSND." The Plan also distinguishes between services provided by participating healthcare providers and services provided by non-participating healthcare providers. "When Covered Services are received from a Participating Health Care Provider, a provider discount provision is in effect. This means the Allowance paid by BCBSND will be considered by the Participating Health Care Provider as payment in full, except for Cost Sharing Amounts, Maximum Benefit Allowances or Lifetime Maximums." However, "[i]f a Member receives Covered Services from a Nonparticipating Health Care Provider within the state of North Dakota, benefit payments will be based on the Allowance . . . . **The Member is responsible for** . . . **any charges in excess of the Allowance** . . . ." (emphasis in original).

On January 22, 2014, VMF submitted a claim to BCBSND billing a total of $33,200 for transporting Ms. Mitchell. The charges were divided among three billing codes: a $21,500 base-rate charge (A0430), a $11,250 mileage charge (A0435), and a $450 medical-supply charge for the intravenous fluids (A0398).

On March 26, 2014, BCBSND issued an explanation of benefits (EOB) partially paying and partially denying VMF's claim. BCBSND paid the Mitchells $5,280.81 on the base-rate charge, $1,479.17 on the mileage charge, and $0 on the medical-supply charge. The EOB explained that, as to the first two charges, "[b]enefits are provided for 80% of the [BCBSND] allowance for this service." As to the third charge, the EOB stated that "[t]his service is included in the payment

---

[1] The remaining 20% is a Coinsurance Amount. The Mitchells had already paid $974.17 of their $2,500 coinsurance maximum, so they could only be required to pay $1,525.83 in coinsurance. After that, BCBSND was responsible for paying the entire Allowed Charge.

made for a related procedure." This left a total of $26,440.02 remaining on VMF's bill. As a non-participating provider, VMF could seek to recover this outstanding balance from the Mitchells. VMF and the Mitchells requested further review, but BCBSND reaffirmed its decision.

## II.  Procedural Background

On July 30, 2015, the Mitchells and VMF entered into a joint litigation agreement. The Mitchells agreed to file a lawsuit against BCBSND and VMF agreed to pay for all costs and attorney's fees related to the lawsuit. Any recovery was to be distributed as follows: "First, to repay [VMF] for all costs and attorney fees paid or owing in this matter; second, to satisfy any outstanding invoices to [VMF]; and third, the remainder, if any, will be split 70% to [VMF] and 30% to the Mitchells." Additionally, VMF "agree[d] to limit any liability of the Mitchells to [VMF] to the amount recovered in Lawsuit. Other than [VMF's] right to receive that amount recovered in Lawsuit . . . [VMF] will thereafter waive all other claims it has against the Mitchells."

The Mitchells filed a complaint on September 2, 2015, asserting various claims. After the district court denied BCBSND's motion to dismiss for lack of standing, the parties filed a "joint motion for an order remanding plaintiffs' claims to the claims administrator and for a stay of proceedings." The Mitchells agreed to file "a single count under ERISA 502(a)(1)(B)" and BCBSND agreed to review the claim as if it "were made for the first time, without any presumption that the prior determination of [the Mitchells'] claim was correct." The district court granted the motion and remanded the case. On January 18, 2017, BCBSND denied the Mitchells' claim in a thirteen-page letter. The Mitchells chose not to pursue any further internal appeals, the stay was lifted, and the matter returned to federal court.

The parties subsequently filed cross-motions for summary judgment. The Mitchells argued that BCBSND abused its discretion by basing its reimbursement decision on undisclosed administrative policies that lacked substantive support. BCBSND argued that the Mitchells lacked standing and that it did not abuse its discretion because its interpretation of the Plan was reasonable. After a hearing, the district court decided that the Mitchells had standing to sue but that BCBSND's interpretation of the Plan was reasonable. However, the district court concluded that BCBSND's decision on the medical-supply charge was based on an "after-the-fact plan interpretation devised for purposes of litigation" announced for the first time in its January 18, 2017 letter. Accordingly, the district court granted summary judgment to BCBSND as to the base-rate and mileage fees, but granted summary judgment to the Mitchells as to the medical-supply fee. BCBSND and the Mitchells appeal the adverse portions of the district court's ruling.

## III. Standing

"When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 934 (8th Cir. 2012). BCBSND argues that the Mitchells have not satisfied either standing requirement. We consider the issue of constitutional standing first, see id., and review both issues de novo, see Rodgers v. Bryant, 942 F.3d 451, 454 (8th Cir. 2019) (constitutional standing); Am. Chems. & Equip. Inc. 401(k) Ret. Plan v. Principal Mgmt. Corp., 864 F.3d 859, 861 (8th Cir. 2017) (statutory standing).

Article III of the Constitution extends the judicial power only to "cases" and "controversies." U.S. Const. art. III, § 2. This case-or-controversy limitation requires, as an "irreducible constitutional minimum," that a plaintiff have constitutional standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "The

plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Id.

BCBSND challenges the injury-in-fact and redressability components of the Mitchells' constitutional standing. It argues that the Mitchells have not suffered an injury in fact because the joint litigation agreement limits their liability to VMF "to the amount recovered in [this] [l]awsuit." VMF has agreed to "waive all other claims against the Mitchells" and the Mitchells will not be required to pay anything to VMF as a result of BCBSND's alleged underpayment. BCBSND also contends that a favorable judicial decision would not "redress" any injury the Mitchells might have suffered because any monetary award would go to VMF, and any declaration of the parties' future rights under the Plan would not benefit the Mitchells because they are no longer enrolled in the Plan. Further, BCBSND asserts that the Mitchells' entitlement to 30% of any recovery beyond the outstanding balance cannot provide any benefit to them because ERISA "does not provide recourse for extracontractual damages," Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 942 (8th Cir. 1999), or punitive damages, see Harsch v. Eisenberg, 956 F.2d 651, 660–61 (7th Cir. 1992). In sum, BCBSND argues that the Mitchells have no "personal stake in the outcome" of this litigation. Gill v. Whitford, 138 S. Ct. 1916, 1929 (2018) (citation omitted).

Several circuits have rejected similar arguments. See Springer v. Cleveland Clinic Emp. Health Plan Total Care, 900 F.3d 284, 287–88 (6th Cir. 2018); N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d 182, 192–94 (5th Cir. 2015); Spindex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc., 770 F.3d 1282, 1289–91 (9th Cir. 2014); HCA Health Servs. of Ga., Inc. v. Emp'rs Health Ins. Co., 240 F.3d 982, 991 (11th Cir. 2001). These courts have reasoned that plan participants are injured not only when an underpaid healthcare provider charges them

for the balance of a bill; they are also injured when a plan administrator fails to pay a healthcare provider in accordance with the terms of their benefits plan. This follows from the fact that plan participants are contractually entitled to plan benefits. The wrongful denial of plan benefits breaches the parties' contract and deprives the participant of the benefit of their bargain. This constitutes an injury to the participant—even if the benefits are assigned to a third party.

We find this analysis persuasive. The injury-in-fact component of constitutional standing requires a plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (citation omitted). The denial of benefits to which a plan participant is contractually entitled is a "particularized" injury that affects the participant in "a personal and individual way." Id. (citation omitted). It is also a "concrete" injury that "actually exist[s]." Id. Although the injury may not be tangible, "intangible injuries can nevertheless be concrete." Id. at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Id. Traditionally, "a party to a breached contract has a judicially cognizable injury for standing purposes" because the other party's breach devalues the services for which the plaintiff contracted and deprives them of the benefit of their bargain. See Kuhns v. Scottrade, Inc., 868 F.3d 711, 716 (8th Cir. 2017) (citation omitted). And in ERISA, Congress sought to "protect contractually defined benefits." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985). Therefore, history and the judgment of Congress both indicate that the denial of plan benefits constitutes a cognizable injury in fact for purposes of constitutional standing.

A court can redress this injury by awarding the contractual benefits to which the participant is entitled. A participant's assignment to a third party of the payment made on a benefits claim, as opposed to the underlying claim itself, does not prevent the court from redressing the participant's injury. See Sprint Commc'ns Co. v. APCC

-8-

Servs., Inc., 554 U.S. 269, 286–87 (2008). We therefore conclude that the Mitchells have constitutional standing to bring this action.

Next, BCBSND challenges the Mitchells' statutory standing. ERISA empowers a plan "participant" or "beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B), (a)(2). A "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit." Id. § 1002(7). This "may include a former employee with a colorable claim for benefits." LaRue v. DeWolff, Boberg & Assocs., 552 U.S. 248, 256 n.6 (2008) (citing Harzewski v. Guidant Corp., 489 F.3d 799 (7th Cir. 2007)). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

BCBSND argues that, because Mr. Mitchell has a new employer and the Mitchells are no longer enrolled in the Plan, the Mitchells lack statutory standing. We disagree. Mr. Mitchell is a former employee and Plan participant; Ms. Mitchell is a Plan beneficiary. The Mitchells have alleged a "colorable claim" that BCBSND unreasonably interpreted the "Allowed Charge" for "Ambulance Services" and denied their claim for benefits based on that interpretation. See LaRue, 552 U.S. at 256 n.6. This is sufficient to provide the Mitchells with statutory standing to bring an action "to recover benefits due to [them] under the terms of [their] plan." See 29 U.S.C. § 1132(a)(1)(B), (a)(2).

## IV. Merits

"While ERISA itself does not specify the standard of review, *see* 29 U.S.C. § 1132(a)(1)(B), the Supreme Court has held that a reviewing court should apply a *de novo* standard of review unless the plan gives the 'administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996) (quoting Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)), abrogated on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). Where, as here, "discretionary authority is given by the plan, we review the plan administrator's decision only for abuse of discretion." Id.

A plan administrator does not abuse its discretion so long as its decision is "reasonable." Id. at 899. The nature of our review depends, in part, on the nature of the plan administrator's decision. "When determining whether an administrator's plan interpretation is reasonable, this circuit uses the five-factor test enunciated in Finley [v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992)]. Where, however, an administrator evaluates facts to determine the plan's application in a particular case . . . the substantial evidence test governs our review." Id. at 899 n.9. Because the issue here centers on BCBSND's interpretation of the Plan,[2] we apply the five Finley factors:

> [1] whether [BCBSND's] interpretation is consistent with the goals of the Plan, [2] whether [BCBSND's] interpretation renders any language in the Plan meaningless or internally inconsistent, [3] whether [BCBSND's] interpretation conflicts with the substantive or procedural requirements of the ERISA statute, [4] whether [BCBSND] ha[s]

---

[2]BCBSND argues that its interpretation of the "Allowed Charge" for air-ambulance services is an unreviewable matter of plan design. We disagree. "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996). Therefore, an employer's decisions regarding the content of a health benefits plan is not reviewable under ERISA. See id. But here, the Mitchells do not challenge *the employer's* decision regarding the Plan's content. They challenge *BCBSND*'s interpretation of the Plan's language.

-10-

interpreted the words at issue consistently, and [5] whether [BCBSND's] interpretation is contrary to the clear language of the Plan.

Finley, 957 F.2d at 621.

Because BCBSND both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, it operates under an inherent conflict of interest. See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 114 (2008). We consider this as a factor in our abuse-of-discretion review. See id. at 115–19. "However, the dispositive principle remains that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace it with an interpretation of their own—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 935 (8th Cir. 2010) (cleaned up).

## A. The Base-Rate and Mileage Fees

The Plan provides that "Ambulance Services," including "[b]enefits for air transportation . . . when ground transportation is not Medically Appropriate and Necessary as determined by BCBSND," will be provided at a percentage of the "Allowed Charge." The "Allowed Charge" is "the maximum dollar amount that payment for a procedure or service is based on as determined by BCBSND." In 2014, BCBSND interpreted these terms as providing for a base-rate reimbursement of $6,601.01 and a mileage reimbursement of $18.72 per mile, "based on 150 percent of the 2013 Medicare rural air ambulance rates."

The Mitchells do not seriously challenge the district court's conclusions that, "because the provisions of the Plan are written quite broadly," providing a payment of 150% of the Medicare rural air-ambulance rate does not contravene the clear "language of the plan" or "render any of the terms of the Plan itself inconsistent or even superfluous." Mitchell v. Blue Cross Blue Shield of N.D., No. 2:15-cv-00086,

2018 WL 3463260, at *12 (D.N.D. July 18, 2018). However, the Mitchells argue that BCBSND's interpretation is unreasonable because it conflicts with "the substantive or procedural requirements of the ERISA statute." See Finley, 957 F.2d at 621. In particular, they assert that BCBSND violated their right to a full and fair review under ERISA § 503 and violated BCBSND's fiduciary duties under ERISA § 404(a).

ERISA § 503 requires an employee benefit plan to:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Department of Labor regulations implement this provision by "set[ting] forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits." See 29 C.F.R. § 2560.503-1(a).

The Mitchells contend that BCBSND's interpretation is unreasonable because it failed to provide them with proper notice that it interpreted the "Allowed Charge" for air-ambulance services as 150% of the 2013 Medicare rural air-ambulance rates. Although BCBSND provided this information to participating healthcare providers on January 13, 2014, it did not similarly notify plan participants. BCBSND also did not provide this information in its initial EOB or in its responses to VMF and the Mitchells' requests for further review. Like the district court, we find it "troubling that the participants of the plan themselves [we]re not provided this information outright." Mitchell, 2018 WL 3463260, at *12. It is especially disconcerting that BCBSND refused to explain the basis for its reimbursement rate when it initially processed the Mitchells' claim. However, we agree with the district court that the

-12-

delay in providing this information does not by itself render BCBSND's interpretation unreasonable given that the Mitchells "were ultimately provided this information through the claim process." Id.[3]

The Mitchells also note that the district court regarded BCBSND's January 18, 2017 letter as "a prolix after-the-fact plan interpretation devised for purposes of litigation." Id. at *11 (cleaned up). However, the district court declined to find BCBSND's interpretation of the "Allowed Charge" for air-ambulance services unreasonable on this basis, explaining that "it cannot be said that the rate is supplied as a post-hoc rationale when the 2014 letter establishes that rate just prior to the provision of services received by Ms. Mitchell." Id. at *12. We agree with this analysis. The alleged deficiencies in the January 18, 2017 letter do not show that the interpretation BCBSND adopted several years earlier was unreasonable.

Next, the Mitchells assert that BCBSND's interpretation is unreasonable because it resulted in a reimbursement rate that was so low as to constitute a breach of fiduciary duty. They cite ERISA § 404(a), which requires a plan administrator to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). However, they have not identified any specific standard BCBSND was required to follow in interpreting the Plan.

---

[3]The Mitchells correctly note that ERISA fiduciaries have a duty to disclose material information to plan participants. See Shea v. Esensten, 107 F.3d 625, 628–29 (8th Cir. 1997). However, their claim in this action is not that BCBSND failed to disclose material information; it is that BCBSND's interpretation of the "Allowed Charge" for air-ambulance services was unreasonable. Their allegations of procedural irregularities in the claims process are therefore only relevant insofar as they bear on the reasonableness of BCBSND's interpretation.

When a plan indexes the term "Allowable Charge" to an external standard, such as "the fee which is recognized by a prudent person," HCA Health Servs. of Ga., 240 F.3d at 996, or "the usual and customary amount," Geddes v. United Staffing All. Emp. Med. Plan, 469 F.3d 919, 930 (10th Cir. 2006), that standard can be used to evaluate the plan administrator's determination. State statutory or administrative rules requiring plan administrators to consider certain factors may also provide a basis for deeming certain interpretations unreasonable. See Phi Air Med. v. Tex. Mut. Ins. Co., M4-12-1671-02, (Tex. Dep't Ins. Jan. 13, 2012); Khaw v. Allstate Ins. Co., ATX-2007-5-P (Haw. Ins. Comm. Oct. 16, 2008). But there is nothing like that here. The Plan circularly defines the "Allowed Charge" as "the maximum dollar amount that payment for a procedure or service is based on as determined by BCBSND." The Mitchells have not identified any rule prohibiting Mr. Mitchell's employer from giving such broad discretion to BCBSND and, absent such a rule, an employer's decision to give broad discretion to a plan administrator is an unreviewable matter of plan design. See Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996). Even if the Mitchells are correct that a plan administrator might nonetheless violate its fiduciary duties if it set a reimbursement rate so low that it failed to act "in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), we cannot say that BCBSND's interpretation of the "Allowed Charge" for air-ambulance services as 150% of the Medicare rural air-ambulance rates violated that basic duty.

This does not mean that BCBSND's discretion is limitless. Its interpretation could be unreasonable if it was not "consistent with the goals of the Plan" or if BCBSND had not "interpreted the words at issue consistently." See Finley, 957 F.2d at 621. The Mitchells suggest that BCBSND's interpretation is inconsistent with the Plan's goal to ensure that members are not held personally responsible for large medical expenses. But this is an imprecise description of the Plan's goal. The Plan's only explicit purpose is to "provide, among other things, various benefits to Members in the Plan." It is consistent with that purpose to provide benefits in accordance with the Plan's terms and to otherwise deny them—even if doing so results in members

-14-

being held responsible for large payments. Nor have the Mitchells shown that BCBSND failed to consistently interpret the "Allowed Charge" for air-ambulance services. The record indicates that BCBSND has used Medicare rates as the applicable benchmark rates since 2009.[4]

Finally, we consider BCBSND's conflict of interest. BCBSND interprets the Plan language, pays participants' claims, and adjudicates their appeals. It was also involved in a dispute with VMF over its reimbursement rate for air-ambulance services shortly before the Mitchells' claims were submitted. This provides a good reason to be suspicious of BCBSND's interpretation. But here, the Plan gives BCBSND broad discretion to determine the "Allowed Charge" for air-ambulance services, and BCBSND has adopted a consistent interpretation, tied to an external benchmark, which is compatible with both the Plan's language and its purpose. Under these circumstances, we cannot say that BCBSND abused its discretion.

## B. The Medical-Supply Fee

In its January 18, 2017 letter, BCBSND explained that it denied the claim for a medical-supply fee because the charge for intravenous fluids was included within the base rate for air-ambulance services. The district court found this interpretation to be "consistent with the language of the plan, which includes services, supplies or treatments used to treat an illness or injury . . . within the Plan's definition of Ambulance Services." Mitchell, 2018 WL 3463260, at *13. However, the district court concluded that, although this interpretation was reasonable, it could not be used

---

[4]The administrative record contains documents related to the Allowed Charges for air-ambulance services in 2014 and 2015. The Mitchells argue that, because the 2015 documents describe BCBSND's "rationale for air ambulance payment methodology" but the 2014 documents do not, BCBSND's 2014 interpretation was unreasonable. However, "[i]n 2015 air ambulance rates [we]re just over 150% of Medicare." This consistency supports BCBSND's interpretation.

-15-

to support BCBSND's decision because it was a post-hoc rationale that was not "thoroughly provided" to the Mitchells until January 18, 2017. Id.

We agree that BCBSND's interpretation is consistent with the Plan's language. But we do not agree that it was an "after-the-fact plan interpretation devised for purposes of litigation." Id. The 2014 EOB explains that the medical-supply charge was denied because "[t]his service is included in the payment made for a related procedure." The record indicates that BCBSND consistently took this position throughout the claims process. We are again troubled by BCBSND's failure to provide a more thorough explanation to the Mitchells at an earlier stage of the claims process. But we cannot say that BCBSND's consistent interpretation of the Plan's language was an abuse of discretion.

## V. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment to BCBSND as to the base-rate and mileage fees, but reverse its grant of summary judgment to the Mitchells as to the medical-supply fee. We conclude that BCBSND was entitled to summary judgment on all claims.

_____